In re Susan **BRYER**, Debtor.

Bankruptcy No. 97–21749.

United States Bankruptcy Court,
D. Maine.

Dec. 7, 1998.

Jonathan Hull, Damariscotta., ME, for debtor.

Kenneth Kimmel, Kimmel & Beach, Kennebunk, ME, for Peerless Insurance Company and Commercial Union Insurance Company.

## MEMORANDUM OF DECISION

JAMES A. GOODMAN, Bankruptcy Judge.

Before the Court is the Motion to Determine Nature of Claim (the "Motion") filed by Peerless Insurance Company and Commercial Union Insurance Company (collectively the "Sureties"). The Motion seeks a determination that the Sureties' "claim is for restitution and is nondischargeable under § 1328(a)(3) of the Code". The parties submitted a joint stipulation of facts "for the purpose of deciding the [Sureties'] Motion". Joint Stipulation of Facts at p. 1 (the Joint Stipulation) [1]. Based upon the briefs of the parties, argument of counsel, and the Joint Stipulation, the Court concludes that the claims that are the subject of the Motion constitute debt arising from a restitution obligation, and as such, are nondischargeable.[2]

## FINDINGS OF FACT [3]

The Debtor, Susan Bryer, pleaded guilty and was convicted on February 3, 1993 of a Class B (felony) theft in Sagadahoc County Superior Court. As part of the Judgment and Commitment in that case, a restitution order was entered, and a copy of the restitution order is attached to and incorporated into the Joint Stipulation as Exhibit A. The

---

1. Although at least one bankruptcy court has held that neither the victim nor the state is required to file an adversary proceeding because "restitution is automatically excepted from discharge such that the provisions of section 523(a) need not be invoked", *In re Sutherland*, 161 B.R. 657, 658 (E.D.Ark.1993), this Court does not have to reach that issue. The parties have agreed to the resolution of the issues presented in the Motion on the facts in the Joint Stipulation and without necessity of further evidentiary hearing, thus there is no need for this Court to address the issue as to whether the better practice would have been for the Sureties to have initiated an adversary proceeding.

2. The Motion is a contested matter governed by F.R.Bankr.P. 9014, which incorporates F.R.Bankr.P. 7052. This memorandum sets forth findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52 and F.R.Bankr.P. 7052. Unless otherwise indicated, all references to statutory sections are to the Bankruptcy Reform Act of 1978 ("Bankruptcy Code" or "Code"), as amended, 11 U.S.C. § 101 *et seq.*

3. The Court adopts the facts submitted in the Joint Stipulation.

restitution order provides, in relevant part, as follows:

It is ordered pursuant to 17–A M.R.S.A. § 1152–2–A that the Defendant forfeit and pay the sum of $ 26,900—Dollars as restitution, through the (Division of Probation and Parole) for the benefit of Town of Topsham (to be paid at the rate of $100.00 per month.)

Execution stayed to $2,000 previously given town to be applied.

The Debtor concedes that the Town's claim arising from the restitution order (the "Restitution Claim") is nondischargeable, expressly stating "there is no argument that the restitution order is non-dischargeable under the Bankruptcy Code, under either Chapter 7 or 13. *11 U.S.C. § 1328(a)*." [4] The Town settled with the Sureties, and the Joint Stipulation incorporates the agreements executed by and between the Town of Topsham and the Sureties as Exhibits B and C. The Town accepted cash payments from the Sureties and transferred all of its rights in the Restitution Claim to the Sureties.[5] More than three years after the assignments were executed, the Debtor filed a voluntary petition and chapter 13 plan of reorganization October 24, 1997. The Sureties filed the Motion seeking a determination of the nature Restitution Claim that they hold via the assignments, and further seeking a determination that the debt due to the Sureties on the Restitution Claim is nondischargeable. The Debtor acknowledges in her pleadings that the Motion involves only the rights of the Sureties relating to the Restitution Claim, not independent civil claims, if any, that the Sureties may have against the Debtor.

## CONCLUSIONS OF LAW

The Sureties seek a determination that, by virtue of the assignments, they stand in the shoes of the Town with respect to the restitution order, the obligations created by the restitution order are automatically excepted from discharge pursuant to 11 U.S.C. § 1328(a)(3), and that the Sureties have standing to challenge the dischargeability of the obligations created by the restitution order. 11 U.S.C. § 1328(a)(3) provides, in relevant part, as follows: ". . . the court shall grant the debtor a discharge of all debts . . . except any debt—. . .(3) for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime."

The Debtor has conceded that the debt created by the restitution order is restitution included in the Debtor's sentence, and the Debtor concedes that the obligations created by the original restitution order are nondischargeable.[6] However, the Debtor now argues that the claims now held by the Sureties as a result of the assignments do not arise from debt from a restitution obligation, but arise from the contract created by the assignments. The Debtor argues that once the Restitution Claim was assigned, it lost its

---

4. Debtor's Memorandum in Support of Debtor's Objection to Creditors' Motion to Determine Nature of Claim at p. 2.

5. Exhibit B, titled "Release and Assignment", is executed between the Town of Topsham and Peerless Insurance and provides, in relevant part, as follows:

"[the Town] hereby transfers and assigns and subrogates unto the Surety, . . . any and all sums of money now due or to become due and causes of action that the undersigned has or may have against Susan Breyer as principal, or any other party that was involved in this matter, for the time period covered by bond no. 74–00–21.

And the [Town of Topsham] does hereby give the Surety . . . full power and authority for its own use and benefit, but at its own cost, to ask, demand, collect, receive, compound and release and in its name or otherwise to prosecute and withdraw any claims, suits or proceedings at law or in equity."

Exhibit C, titled "Full Release and Assignment" provides, in relevant part, as follows:

"(2) The Town has assigned and does hereby assign, sell, transfer and set over to the Surety all its right, title and interest in relation to any and all items claimed in and by the said proof of loss, and all money that may be recovered by reason thereof, for the time period covered by bond no AM7100846

(3) The Town has appointed and does hereby appoint the Surety as its attorney in fact to ask, demand, receive, receipt for and sue for in the name of the Town or the Surety, and taken any and all lawful ways and means for the recovery of any and all such sums of money at the Surety's expense."

6. *See* Debtor's Memorandum in Support of Debtor's Objection to Creditor's Motion to Determine Nature of Claim at p. 2.

character as debt for restitution and became dischargeable. This Court rejects this argument as being unsupported by the case law and the legislative history relating to enactment of 11 U.S.C. § 1328(a)(3).

Prior to 1990, unlike its Chapter 7 corollary in § 523(a)(7), § 1328(a) did not contain language excepting restitution orders from discharge in Chapter 13, and in the absence of such language the Supreme Court was unwilling to except restitution orders from discharge in a Chapter 13 case. *Penn. Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) (a state restitution obligation was a "debt" within the meaning of section 101(11) [now 101(12) ] and, in the absence of an express legislative intention to except restitution obligations from discharge, such debt was held to be dischargeable) In a speedy response to *Davenport*, Congress enacted P.L. 101–581, § 3, 104 Stat, 2865 (1990), codified at 11 U.S.C. § 1328(a)(3). The legislative history of § 1328(a)(3) confirms Congress' dissatisfaction with *Davenport* as follows:

The Senate Report (Judiciary Committee) to accompany Senate Bill 1931 stated the following:

[T]his amendment will have the effect of overruling the Supreme Court's recent decision in *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), which held that criminal restitution obligations are dischargeable debts under Chapter 13.... *Importantly, these provisions will prevent Federal bankruptcy courts from invalidating the results of State criminal proceedings.* (emphasis added)

S.Rep. No. 434, 101 Cong., 2d Sess. 8, *reprinted in* 1990 U.S.C.C.A.N. 4065, 4071. In addition, the House of Representatives Report stated the following:

Section 1902 responds to the May 29, 1990 *Pennsylvania Department of Public Welfare v. Davenport* decision, in which the Supreme Court of the United States ruled that criminal restitution debts are dischargeable upon completion of a Chapter 13 reorganization plan. Section 1902 corrects this result by add-ing a new paragraph (3) to Section 1328(a) so that criminal restitution payments will be nondischargeable in Chapter 13. Section 1902 is not intended to alter in any way the coverage of section 523(a)(7), as that paragraph has been interpreted in *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), to make criminal restitution obligations nondischargeable in Chapter 7. As a result of the change made in Section 1902, no debtor with criminal restitution obligations will be able to discharge them through any bankruptcy proceeding.

H.R.Rep. No. 681(I), 101 Cong., 2d Sess. 165, *reprinted in* 1990 U.S.C.C.A.N. 6472, 6571.

■ There can be no doubt that Congress intended to prevent debtors from discharging criminal restitution obligations in both Chapter 7 cases and Chapter 13 cases. Although *Davenport* has been abrogated by statute with regard to its holding that restitution obligations are dischargeable, the remainder of the opinion remains valid. *See e.g. Cohen v. De La Cruz*, —— U.S. ——, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). In determining whether or not the restitution obligation in *Davenport* was dischargeable, the Supreme Court evaluated whether or not the restitution obligation was a "debt". *Davenport*, 495 U.S. at 557–559, 110 S.Ct. 2126. In doing so, Supreme Court focused on the nature of the debt, and *not* the holder of the claim. The Supreme Court rejected the argument that a restitution obligation was not a "debt" if a creditor had no ability to enforce the restitution obligation in state court. *Davenport*, 495 U.S. at 559–560, 110 S.Ct. 2126. (state court "enforcement mechanism" was not relevant to the determination of whether restitution obligation was a "debt"). This analysis in *Davenport* confirms that, in a dischargeability determination, the focus is properly on the nature of the debt, not the identity of the holder of the restitution claim.

In the present case, although the parties agree that the original restitution obligation was nondischargeable, the Debtor argues that the Court should focus on the Sureties' inability as assignees to enforce the restitu-

tion obligation in state court. The Debtor argues that under Maine law, the Sureties have no right to enforce the restitution obligation in state court, therefore, the Sureties have no right to enforce the Restitution Claim as a nondischargeable debt in this Court. In addition, the Debtor argues that Maine law prohibits the Sureties from asserting a subrogated claim in a criminal proceeding, therefore the Sureties should be precluded from challenging the dischargeability this bankruptcy proceeding. Utilizing the same analysis as applied by the Supreme Court in *Davenport*, this Court is not required to evaluate the Sureties' state law enforcement rights in either civil or criminal proceedings to determine dischargeability. *Davenport*, 495 U.S. at 560, 110 S.Ct. 2126.

The Debtor cites no authority in support of her analysis that an assignee lacks standing to challenge dischargeability of a specific debt, and the Debtor cites no authority to support the argument that the court should focus on the identity of the holder of the claim, not the nature of the debt, even though several courts have dealt with these very issues when considering complaints filed pursuant o § 523 and § 727. *Florida v. Ticor Title Insurance Company, Inc.*, (In re Florida), 164 B.R. 636, 640 (9th Cir. BAP 1994). (creditor bringing action for § 523 determination of dischargeability was assignee of tort victim); *In re Meyer*, 120 F.3d 66, 68 (7th Cir.1997) (application of Rule 4007(c) regarding timeliness of § 523 complaint should focus on whether complaint was timely filed against a specific debt, not so much on who makes the complaint); and *In re Richardson*, 221 B.R. 956, 962 (D.Wyo.1998) (court allowed § 523 complaint by successor-in-interest and held that the fact that the Debtor executed a note as part of court ordered restitution did not change the nature of the restitution obligation). "Where, as here, congressional intent is clear, our sole function is to enforce the statute according to its terms." *Davenport*, 495 U.S. at 564, 110 S.Ct. 2126. At the time the Court made this statement, § 1328 had not been amended. Given the amendment, congressional intention is clear. There is no factual or legal basis for this Court to conclude that the Sureties, as assignees and current holders of the Restitution Claim, should be precluded from challenging the dischargeability of the restitution debt. The statutory changes adopted since *Davenport* are clear. This Court must apply § 1328(a)(3) as intended. The "debt" created by Restitution Claim arises from a restitution obligation of the Debtor and is therefore nondischargeable in this bankruptcy case.