**In re Michael BARTON, Debtor.**

**Patsy Ramey, Plaintiff,**

v.

**Michael Barton, Defendant.**

**No. 03–3356.**

United States Bankruptcy Court, N.D. Ohio.

Nov. 1, 2004.

872

William H. White, Lima, OH, for debtor.

### *DECISION AND ORDER*

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint to determine the dischargeability of a debt arising from the termination of the Parties' marriage. The Plaintiff brings her com-

plaint pursuant to 11 U.S.C. § 523(a)(15) which generally excludes from the scope of a bankruptcy discharge marital debts which, although not in the nature of support, arise from a separation or divorce. At the conclusion of the Trial, the Court took the matter under advisement. The Court has now had the opportunity to fully consider the matter, and based upon a review of the arguments made by the Parties, together with the evidence presented, the Court, in accordance with Bankruptcy Rule 7052, makes the following factual findings and legal conclusions.

After more than 20 years, the marriage between the Plaintiff, Patsy Ramey, and the Defendant/Debtor, Michael Barton, was terminated by a judgment entry of divorce. During their marriage, the Parties had become jointly indebted to the Internal Revenue Service for approximately $4,000.00 as the result of delinquent taxes. Set forth in the court entry terminating the Parties' marriage, and forming the foundation of the instant action, was a provision that each Party was to be responsible for their one-half share of the joint tax obligation and to hold the other Party harmless thereon.

In March of the year following the termination of their marriage, the Plaintiff paid the Parties' obligation to the IRS in full which, because of interest and penalties, had grown to $8,577.85. In order to obtain the necessary funds to pay the tax obligation, the Plaintiff utilized a portion of those funds she had obtained when she withdrew her entire interest in a state-sponsored pension plan.

As consideration for paying the Parties' joint tax obligation, the Debtor entered into a contemporaneous written arrangement whereby he agreed to pay the Plaintiff the sum of $4,288.00—representing his one-half share of the tax obligation—at the rate of $50.00 per month. Since entering into this agreement, the Debtor has paid to the Plaintiff the sum of $750.00, leaving a balance due of $3,538.00. In 2003, the Debtor filed a petition in this Court for relief under Chapter 7 of the United Bankruptcy Code, thereafter seeking to discharge his outstanding obligation to the Plaintiff through the commencement of the instant adversary proceeding.

## DISCUSSION

In accordance with Bankruptcy Rule 7001(6), the Plaintiff has brought the instant adversary proceeding seeking a determination as to the dischargeability of a debt owed to her by her former husband. Pursuant to 28 U.S.C. § 157(b)(2), a proceedings brought to determine the dischargeability of a particular debt is a core proceedings over which this Court has been conferred with the jurisdictional authority to enter final orders. 28 U.S.C. § 1334.

As taken from her complaint, the statutory basis for the Plaintiff's action to determine dischargeability rests entirely upon the exception to discharge contained in § 523(a)(15) of the Bankruptcy Code. Under this section, any debts which are incurred by a debtor during the course of a separation or divorce or under a separation agreement or court order, and which do not otherwise fall under the exception to discharge contained in 11 U.S.C. § 523(a)(5), are excepted from a bankruptcy discharge. However, unlike those marital debts covered by § 523(a)(5), which are absolutely barred from the protections of a bankruptcy discharge, the breadth of § 523(a)(15) is limited in two important aspects. First, a marital debt subject to § 523(a)(15) will still be dischargeable if it can be shown that the debtor does not have the "ability to pay" the debt. 11 U.S.C. § 523(a)(15)(A). Additionally, a marital debt may also be discharged if, on

balance, it can be established that the benefit of discharging the debt "outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]" 11 U.S.C. § 523(a)(15)(B).

■■■ In making a determination as to whether the exceptions to nondischargeability set forth in paragraphs (A) and (B) are applicable, it is the debtor who carries the burden of proof. As a preliminary matter, however, it is the plaintiff who carries the initial burden to show that the debt is of the type excepted from discharge under this section. *Hart v. Molino (In re Molino),* 225 B.R. 904, 907 (6th Cir. BAP 1998). For both these evidentiary burdens, the preponderance of the evidence standard is applied. *Grogan v. Garner,* 498 U.S. 279, 288–89, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Although not normally a point of controversy, the Debtor has raised a legal issue pertaining to the Plaintiff's compliance with her initial burden to establish the applicability of § 523(a)(15); specifically, while acknowledging that through the judgment entry of divorce he was required to pay one-half of the Parties' tax obligation, it is the Debtor's position that by executing an extraneous agreement—that is, not contained in the Parties' judgment entry of divorce—a novation occurred, thus substituting a potentially nondischargeable debt for a dischargeable debt. In the dischargeability context, however, this Court has previously addressed and then rejected the position that the execution of a subsequent agreement can substitute an otherwise nondischargeable debt for a dischargeable debt—put in the vernacular, a tiger does not change its stripes. *See Houston v. Cantrill (In re Cantrill),* 247 B.R. 429 (Bankr.N.D.Ohio 2000). In addition, when the Supreme Court was faced with the issue as to whether a subsequent settlement agreement, wherein prior state law claims for fraud were released, could negate the creditor's right to bring a dischargeability action for fraud under § 523(a)(2)(A), the Court answered in the negative stating, the "settlement agreement and releases may have worked a kind of novation, but that fact does not bar the [creditor] from showing that the settlement debt arose out of 'false pretenses, a false representation, or actual fraud,' and consequently is nondischargeable, 11 U.S.C. § 523(a)(2)(A)." *Archer v. Warner,* 538 U.S. 314, 323, 123 S.Ct. 1462, 1468, 155 L.Ed.2d 454 (2003).

■■ Consistent, therefore, with these decisions, the Debtor's legal argument concerning the inapplicability of § 523(a)(15) must be rejected. A word of caution, however; this should not be taken to mean, as will become evident later in this Court's analysis, that the Parties' extraneous agreement regarding the Debtor's tax liability is not relevant; only that the agreement cannot be used to substitute a dischargeable debt for a nondischargeable debt.

■■ Turning now to the first exception to nondischargeability as set forth in paragraph (A) of § 523(a)(15)—whether he has the "ability to pay"—those income and expense figures submitted by the Debtor to the Court show a shortfall in his monthly income of approximately $300.00. (Exs. A & B). To make up this shortfall, testimony was given to the effect that family members provide the Debtor with financial help. Still, as revealed by the Plaintiff during cross examination, questions do exist as to overall veracity of the Debtor's testimony concerning his budget, specifically his expenses. Noteworthy, the Debtor has a roommate who could make some contributions, albeit minor, to his household expenses; also, the Debtor has excessive outlays for things such as cigarettes and entertainment.

■ Under the "ability to pay" test of § 523(a)(15), the salient question asked is whether a debtor, after factoring in their full income potential and then setting this against those expenses which are reasonably necessary to be expended for support, has sufficient funds available to pay the marital debt. *Calabrese v. Calabrese (In re Calabrese)*, 277 B.R. 357, 361 (Bankr. N.D.Ohio 2002). As applied here, no affirmative evidence of any strength was presented tending to show that the Debtor could realistically increase his income. To the contrary, considering his age and health, the Debtor will unlikely be able to maintain any sort of job.

On the other side of the equation, while, for the reasons already stated, questions do exist concerning both the necessity and veracity of a few of the Debtor's monthly expenditures, this much is still certain: most of those monthly itemized expenses listed by the Debtor are both necessary and minimal. For example, the Debtor lists $409.67 for rent and only $175.00 for food. Consequently, even if this Court were to make certain downward adjustments in the Debtor's needed monthly expenses, such adjustments would not enable the Debtor, after meeting life's basic necessities, to become fully independent of the financial help now provided to him by family members.

■■ Even at its most procreditor interpretation, however, donations from friends or family are, at best, tenuous. Therefore, in the absence of an extenuating circumstance,—none of which exist here—such donations should be discounted in any § 523(a)(15)(A) analysis. Put into practice then, the Debtor cannot be found to have the "ability to pay" his marital debt because, although his required payments to the Plaintiff are minimal, the Debtor's monthly budget shows a negative balance when outside financial help is discounted. As such, the Debtor has met his necessary burden under § 523(a)(15)(A). Accordingly, since the exceptions to nondischargeability set forth in paragraphs (A) and (B) of § 523(a)(15) are read in the disjunctive, the Plaintiff is not entitled to rely on this section to hold her debt against the Plaintiff nondischargeable. *Smith v. Shurelds (In re Shurelds)*, 276 B.R. 803, 807 (Bankr.N.D.Ohio 2001).

■ As alluded to above, however, the Parties' extraneous agreement, in which the Debtor agreed to reimburse the Plaintiff for paying his outstanding tax obligation, still has relevancy in this case. Under § 523(a)(14) it is provided: a discharge under § 727 does not discharge an individual debtor from any debt "incurred to pay a tax to the United States that would be nondischargeable pursuant to paragraph (1)[.]" This section was added to the Bankruptcy Code through the Bankruptcy Reform Act of 1994, and was intended "to impose a limitation on prebankruptcy substitution of a dischargeable obligation for a nondischargeable obligation." *American Express Centurion Bank v. Gavin (In re Gavin)*, 248 B.R. 464, 465 (Bankr.M.D.Fla.2000).

■ Although the Plaintiff did not plead § 523(a)(14) as a ground for nondischargeability in her Complaint, a bankruptcy court, under its equitable powers, may revise a pleading so as to conform with the evidence presented. 11 U.S.C. § 105(a). *See also* FED.R.BANK.P. 7015(b) (amendments to pleadings to conform with the evidence); FED.R.BANK.P. 9005 (harmless error). Here, such equitable circumstances exist. On the one side, the onus on the Plaintiff is large if the Debtor fails to abide by his promise to pay his portion of the Parties' tax debt, the Plaintiff having, at least in part, sacrificed her entire pension to pay the Debtor's tax debt to the IRS. On the other side, the Debtor has

already been put on notice that the dischargeability of his tax obligation would be an issue, thus lessening any prejudice which may befall him.

■■■■■ Pursuant to a plain reading of the statute, § 523(a)(14) has two elements: (1) the debt must be incurred to pay a tax owed to the United States; and (2) the tax owed to the United States must otherwise be nondischargeable under § 523(a)(1). On these elements, bankruptcy law, in furtherance of its underlying "fresh-start" policy, generally construes exceptions to discharge strictly against a creditor and liberally in a debtor's favor. *Rembert v. AT & T Universal Card Svc. Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir.1998). *See also* 11 U.S.C. § 727(a) (putting forth that the court "shall" grant a discharge unless). On the other hand, with certain types of debts—tax debts being one of them [1]—the debtor is generally required to bring an action to determine the dischargeability of the debt. And, in the absence of such an action, the debt cannot be discharged. *Jarrett v. State of Ohio, Dep't of Taxation*, 293 B.R. 127, 133 (Bankr.N.D.Ohio 2002). *See also United States v. Mathews (In re Mathews)*, 209 B.R. 218, 221 fn. 4 (6th Cir. BAP 1997) (citing to § 523(c)(1) and stating, "[t]he Bankruptcy Code permits but does not require the IRS to bring a complaint to determine dischargeability before it seeks collection from a taxpayer who has been a debtor in bankruptcy."). So as to align these competing policy decisions, the burden of proof as to the applicability of § 523(a)(14)'s two elements will be allocated as follows: The moving party will carry the initial burden to establish that the debt at issue was incurred to pay a tax obligation owed to the United States. Once established, the burden will then shift to the debtor to demonstrate that the underlying tax debt would be dischargeable under § 523(a)(1).

■■■■■ On the initial burden, an obligation arising solely from a divorce decree or other similar instrument to pay the tax debt of a former spouse will not implicate § 523(a)(14). Thus, the Parties' judgment entry of divorce, and the obligation of the Debtor to pay his portion of the Parties' tax obligation thereunder, does not implicate § 523(a)(14). The key here is that § 523(a)(14) requires that a *"debt"* be *"incurred"* to pay a tax obligation. (emphasis added).

■■■■■ Under its normal reading, the term "incurred" equates with a volitional act. WEBSTER'S II, 621 (1984). In turn, a "debt" under bankruptcy law denotes a right to payment. 11 U.S.C. §§ 101(5)/(12). In the context of § 523(a)(14) then, for a "debt" to be "incurred" to pay a tax obligation, a bargained for exchange must exist—that is, a contractual relationship. Such is inapposite, however, to an entry of divorce, or even a separation agreement for that matter, which has at its underpinnings applicable nonbankruptcy law on property distribution, not the parties' bargained for exchange.

■■■■■ By comparison, the Parties' extraneous agreement—wherein in exchange for paying his tax obligation, the Debtor agreed to pay the Plaintiff $50.00 per month—has all the indicia of a contractual relationship. With respect to each other, the Plaintiff was under no legal obligation to pay the Debtor's share of his tax debt to

---

**1.** Besides tax obligations, other examples of debts where the burden is placed upon the debtor to bring the action to determine dischargeability include, debts for spousal or child support, § 523(a)(5); governmental fines and penalties, § 523(a)(7); and student loans, § 523(a)(8).

the IRS. Similarly, while the Debtor was under a legal obligation to pay his portion of the tax debt, he was not obligated to pay the Plaintiff $50.00 per month. As result, each party received valuable consideration: The Plaintiff through the assurance of future performance by the Debtor; the Debtor by being relieved of his tax obligation to the IRS. Thus, for these reasons, the evidence as it presently exists before the Court establishes that the Debtor's obligation to the Plaintiff was "incurred" to pay a tax "debt" owed to the United States.

The Debtor thus now has the burden to establish that the tax debt at issue is otherwise dischargeable under bankruptcy law. But given that no notice was provided to the Debtor that the applicability of § 523(a)(14) would be put at issue, no evidence presently exists on this point. Accordingly, due process requires that the Debtor be afforded the opportunity to put forth evidence and make arguments in support of his burden that the Parties' underlying tax debt would have been dischargeable under § 523(a)(1). Accordingly, before a final determination is made in this adversary proceeding, the Debtor shall be given the opportunity to respond to this issue.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

*ORDERED* that the Debtor, Michael Barton, be given twenty-one (21) days, commencing from the date of the entry of this order, to respond to the matter raised in this Decision. The Plaintiff, Patsy Ramey, is thereafter permitted fourteen days (14), commencing from the filing of the Debtor's response, to submit a reply. Either party, within their allotted time frame, may request that a hearing be scheduled on the matter.