In re Antonia BURRELL–
RICHARDSON,
Debtor.

Antonia Burrell–Richardson, Appellant,

v.

Massachusetts Board of Higher
Education, Appellee.

BAP No. MB 06–030.
Bankruptcy Case No. 06–10288–JNF.
Adversary Proceeding No.
06–01098–JNF.

United States Bankruptcy Appellate Panel
of the First Circuit.

Dec. 28, 2006.

---

**5.** Of course, a secured creditor may still file a motion for relief from the automatic stay pur-

suant to section 362(d).

Walter Oney, on brief for Appellant.

Thomas F. Reilly, David Hadas, on brief for Appellee.

Before DE JESÚS, VAUGHN, and DEASY, United States Bankruptcy Appellate Panel Judges.

DEASY, Bankruptcy Judge.

This matter is on appeal from an order of the bankruptcy court dismissing an adversary proceeding filed by Antonia Burrell–Richardson (the "Debtor") against the Massachusetts Board of Higher Education wherein the Debtor sought a declaration that her obligation to the Commonwealth

of Massachusetts (the "Commonwealth"), arising from a student loan obligation reduced to judgment prepetition, should be discharged by her bankruptcy. For the reasons set forth below, the order of the bankruptcy court is AFFIRMED.

## BACKGROUND

In 1996, the Debtor borrowed funds from the Commonwealth under a "no interest loan" program in order to fund a portion of her college education. The Commonwealth was the lender that issued the student loan in question, and the Massachusetts Board of Higher Education, through its Office of Student Financial Assistance, was the administrator of the loan. In 2004, after the loan went into default, the Commonwealth commenced a civil action against the Debtor in Massachusetts state court. In April 2005, a Massachusetts state court entered a default judgment against the Debtor in the amount of $2,115.00.

On February 11, 2006, the Debtor filed a chapter 7 bankruptcy petition. On the same day, the Debtor filed an adversary proceeding seeking a declaration that any obligation she owed to the Commonwealth on account of her student loan obligation was extinguished and merged into the state court judgment and therefore was dischargeable in her bankruptcy case, notwithstanding the provisions of 11 U.S.C. § 523(a)(8),[1] which permits the discharge of student loan debt only if excepting such debt from discharge "will impose an undue hardship on the debtor and the debtor's dependents." The Commonwealth filed a motion to dismiss the Debtor's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Commonwealth argued that the Debtor's

theory of dischargeability (i.e., that the Commonwealth altered the nature of the Debtor's obligation to it by reducing to judgment the defaulted student loan so that the obligation lost its special status under § 523(a)(8)) had been rejected by the United States Supreme Court. Upon considering the Commonwealth's motion and the Debtor's objection thereto at a hearing, the bankruptcy court granted the Commonwealth's motion and dismissed the Debtor's adversary proceeding. The Debtor appealed the bankruptcy court's order.

## JURISDICTION

A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An interlocutory order " 'only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re Am. Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998). An order granting a motion to dismiss is a final order that ends the litigation on the merits of the complaint. *See*

---

**1.** Unless otherwise stated, all references to the "Bankruptcy Code" or to specific sections are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. §§ 101–1330.

*Aybar v. Crispin–Reyes,* 118 F.3d 10, 13 (1st Cir.1997).

## STANDARD OF REVIEW

■ Appellate courts generally apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See TI Fed. Credit Union v. Del-Bonis,* 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.),* 43 F.3d 714, 719–20 n. 8 (1st Cir.1994). A bankruptcy court's determination that a proceeding should be dismissed is a legal conclusion subject to *de novo* review. *See In re Colonial Mortgage Bankers Corp.,* 324 F.3d 12, 15 (1st Cir.2003). Upon review of a dismissal order, the appellate court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the appellant. *Aybar,* 118 F.3d at 13. The appellate court can affirm the allowance of a motion to dismiss only if the factual averments in the complaint hold out no hope of recovery under any theory set forth in the complaint. *Colonial Mortgage,* 324 F.3d at 15.

## DISCUSSION

At issue is whether the bankruptcy court erred in determining that the true nature of the debt to the Commonwealth, reduced to judgment prior to the Debtor's bankruptcy, was "for an educational benefit overpayment or a loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend" and therefore subject to discharge only if excepting such debt from discharge would "impose an undue hardship on the debtor and the debtor's dependents" within the meaning of § 523(a)(8). The Debtor suggests that the bankruptcy court failed to give full faith and credit to the Massachusetts state court judgment in making its determination.[2] The Debtor argues that although her debt to the Commonwealth was originally an educational loan that would have been dischargeable only upon a showing of undue hardship within the meaning of § 523(a)(8), the Commonwealth's cause of action merged into, and was extinguished by, the judgment it obtained in Massachusetts state court. According to the Debtor, she was indebted on a judgment rather than a student loan at the time she filed bankruptcy and therefore her obligation to the Commonwealth could be discharged notwithstanding the provisions of § 523(a)(8). In the Debtor's view, the bankruptcy court erred by concluding that the status of the student loan obligation was not transformed by the state court judgment. According to the Debtor, the first part of the full faith and credit analysis (i.e., looking to the law of the rendering state to ascertain the preclusive effect of the state court judgment) required the bankruptcy court to conclude that the Debtor's obligation to repay her student loan debt was completely merged into and

---

2. The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give full faith and credit to the judgments of state courts. Courts must "treat a state court judgment with the same respect that it would receive in the courts of the rendering State." *Matsushita Elec. Indus. Co., Ltd. v. Epstein,* 516 U.S. 367, 373, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996). When faced with a state court judgment, a federal court must first look to the law of the rendering state to ascertain the preclusive effect of the judgment. *Id.* at 375, 116 S.Ct. 873. If state law indicates that a particular claim or issue would be barred from litigation in a court of that state, then the federal court must next decide whether, as an exception to the Full Faith and Credit Act, it should refuse to give preclusive effect to the state court judgment. *Id.*

extinguished by the state court judgment. *See Matsushita*, 516 U.S. at 375, 116 S.Ct. 873.

■ Massachusetts state courts have indicated that merger is not a separate doctrine but merely a subset of claim preclusion. *Blanchette v. Sch. Comm. of Westwood*, 427 Mass. 176, 692 N.E.2d 21, 26 n. 4 (1998). "Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been litigated in the action." *Jarosz v. Palmer*, 436 Mass. 526, 766 N.E.2d 482, 487 n. 3 (2002) (citations omitted). Claim preclusion requires: (1) the identity or privity of the parties to the present and prior actions, (2) the identity of the cause of action, and (3) a prior final judgment on the merits. *Kobrin v. Bd. of Registration in Med.*, 444 Mass. 837, 832 N.E.2d 628, 634 (2005) (citations omitted); *Daluz v. Dept. of Corr.*, 434 Mass. 40, 746 N.E.2d 501, 505 (2001).

■ The Commonwealth argues that the Debtor's attempt to invoke claim preclusion against the Commonwealth is misplaced because the Commonwealth is not seeking to relitigate the matters that were before the state court. According to the Commonwealth, the question in the state court collection action was simply whether the Debtor was obligated to repay her student loan to the Commonwealth. The default judgment confirmed that the Debtor was so obligated. The Commonwealth argues that it is not attempting to alter or in any way undermine the state court judgment. Rather, the Commonwealth wishes to rely on the state court judgment to establish the validity of the Debtor's obligation. According to the Commonwealth, the issue to be decided in an adversary proceeding would be whether the

Debtor's obligation could be discharged. As this issue was not the subject of the state court litigation, the Commonwealth contends that the second element of the claim preclusion test—the identity of the cause of action—is not met. In the Commonwealth's view, to preclude the Commonwealth from defending against the Debtor's dischargeability adversary proceeding, where dischargeability issues were not the subject of the state court litigation, would be totally inconsistent with the purpose of the claim preclusion doctrine, which is based on the idea that the party to be precluded has had an incentive and opportunity to litigate the matter in the first lawsuit. *Kobrin*, 444 Mass. 837, 832 N.E.2d at 634 (citations omitted).

The Panel agrees with the Commonwealth and finds its position is supported by two decisions of the United States Supreme Court, *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), and *Archer v. Warner*, 538 U.S. 314, 123 S.Ct. 1462, 155 L.Ed.2d 454 (2003). In *Brown*, a Bankruptcy Act case, the Supreme Court held that claim preclusion[3] does not prevent a bankruptcy court from looking beyond the record of a state court proceeding and the documents that terminated the proceeding when considering the dischargeability of a debt. *Brown*, 442 U.S. at 138–39, 99 S.Ct. 2205 (as explained in *Archer*, 538 U.S. at 318–20, 123 S.Ct. 1462). The facts in *Brown* were as follows:

(1) Brown sued Felsen in state court seeking money that (Brown said) Felsen had obtained through fraud; (2) the state court entered a consent decree embodying a stipulation providing that Felsen would pay Brown a certain amount; (3) neither the decree nor the

3. In *Brown,* the Supreme Court uses the term "res judicata" instead of "claim preclusion."

stipulation indicated the payment was for fraud; (4) Felsen did not pay; (5) Felsen entered bankruptcy; and (6) Brown asked the Bankruptcy Court to look behind the decree and stipulation and to hold that the debt was nondischargeable because it was a debt for money obtained by fraud.

*Brown*, 442 U.S. at 128–29, 99 S.Ct. 2205 (as described in *Archer*, 538 U.S. at 319, 123 S.Ct. 1462). The Supreme Court rejected the notion that a creditor is barred from introducing extrinsic evidence to determine whether a debt previously reduced to judgment may be discharged. *Brown*, 442 U.S. at 138–39, 99 S.Ct. 2205. The Supreme Court stated that "careful inquiry reveals that neither the interests served by [claim preclusion], the process of orderly adjudication in state courts, nor the policies of the Bankruptcy Act would be well served by foreclosing petitioner from submitting additional evidence to prove his case." *Id.* at 132, 99 S.Ct. 2205. The Supreme Court explained, in situations such as that faced by Brown, a creditor is not attempting to assert a new ground for recovery nor to attack the validity of the prior judgment. *Id.* at 133, 99 S.Ct. 2205. Rather, such a creditor is attempting to meet the new defense of bankruptcy that the debtor has raised. *Id.* The Supreme Court explained that during an ordinary collection proceeding the considerations material to discharge are irrelevant. *Id.* at 134, 99 S.Ct. 2205. At that time the debtor's bankruptcy is hypothetical and therefore it does not make sense to litigate dischargeability issues during a state court collection suit as such issues "are not directly in issue and neither party has a full incentive to litigate them." *Id.* at 134–35, 99 S.Ct. 2205.

In *Archer*, the buyers of a business, the Archers, brought suit in state court against the sellers, the Warners, alleging fraud in connection with the sale. Pursu-

ant to a settlement, the Warners executed a $100,000.00 promissory note. When the Warners defaulted on the note, the Archers brought another suit in state court seeking payment on the note. The Warners then filed chapter 7 bankruptcy. The Archers filed an adversary proceeding seeking judgment for the amount due under the note and a determination that the debt was nondischargeable under § 523(a)(2)(A). The lower courts found the note dischargeable. The Archers appealed to the United States Supreme Court.

The Supreme Court explained that the settlement agreement "left only one relevant debt: a debt for money promised in the settlement agreement itself." *Id.* at 319, 123 S.Ct. 1462. The Supreme Court indicated, however, that reducing a fraud claim to a settlement does not definitively change the nature of the debt for dischargeability purposes. *See id.* at 320, 123 S.Ct. 1462. Rather, the party asserting nondischargeability is left with the ability to demonstrate that the settlement debt is a debt for money obtained by fraud in the context of § 523(a)(2)(A) proceeding. *Id.* at 323, 123 S.Ct. 1462. In other words, creditors are free to look beyond a settlement to determine the character of the debt.

The general principle of *Brown* and *Archer*-that bankruptcy courts should examine the underlying nature of a debt, no matter what its form, when the dischargeability of the debt is in question-has been followed by courts repeatedly. *See, e.g., Bova v. St. Vincent DePaul Corp. (In re Bova)*, 276 B.R. 726, 731–32 (1st Cir. BAP 2002) (concluding Illinois law, which permits victims to seek civil judgments to enforce unsatisfied criminal restitution orders, does not change the criminal origins of the restitution order and therefore find-

ing that the resulting civil judgment fell within the exception to discharge provision of § 1328(a)(3)); *Richardson v. Hidy Honda, Inc. (In re Richardson)*, 221 B.R. 956, 962 (D.Wyo.1998) (concluding that a chapter 7 debtor's execution of a promissory note evidencing his restitutionary obligation to the victim of his criminal embezzlement did not transform the nature of the debtor's obligation from a nondischargeable debt for the debtor's embezzlement under § 523(a)(4) into a dischargeable contractual obligation; rather, in ruling on the dischargeability of the debtor's obligation on the promissory note, the bankruptcy court could inquire into the circumstances surrounding the debtor's execution of the note to ascertain whether the debt was derived from the debtor's alleged embezzlement); *McIntyre v. White (In re McIntyre)*, 328 B.R. 356, 361–62 (Bankr. D.Mass.2005) (holding that the untimely death of a non-debtor spouse does not transform past due alimony into a dischargeable debt through an assignment by operation of law, which would result in excepting the debt from nondischargeability under § 523(a)(5), as such an absurd result would be at odds with the intent of the drafters of the Bankruptcy Code); *Ramey v. Barton (In re Barton)*, 321 B.R. 869, 874 (Bankr.N.D.Ohio 2004) (disagreeing with the debtor that a novation occurred, thus substituting a potentially nondischargeable debt under § 523(a)(15) for a dischargeable debt, when the debtor executed an agreement post-divorce regarding liability for his share of the parties' joint tax obligations stating "a tiger does not change its stripes"); *Moore v. Murphy (In re Murphy)*, 297 B.R. 332, 347 (Bankr. D.Mass.2003) ("It is well established, however, that claim preclusion does not bar a

bankruptcy court's review of the *nature* of the debt in question for purposes of determining its dischargeability."); *Peerless Ins. v. Swanson (In re Swanson)*, 231 B.R. 145, 149 (Bankr.D.N.H.1999) (concluding that a debt, which was owed by a chapter 7 debtor in her capacity as a court-appointed guardian of a probate estate, to an insurance company, which had posted a bond for the debtor and ultimately paid out sums when a probate court determined that the debtor failed to properly account for property entrusted to her, was a debt for defalcation while acting in a fiduciary duty within the meaning of § 523(a)(4), even though the debt was embodied in an otherwise unsecured promissory note executed by the debtor in favor of the insurance company); *In re Bryer*, 227 B.R. 201, 202–03 (Bankr.D.Me.1998) (holding that a nondischargeable restitutionary obligation imposed on a chapter 13 debtor, as a part of his sentence in the prosecution for theft of town funds, did not lose its character as a nondischargeable restitutionary debt under § 1328(a)(3) following the debt's assignment from the town to its sureties); *Roy v. United States (In re Roy)*, 189 B.R. 245, 248 (Bankr.D.N.H.1995) (holding that a debtor may not silently transform a Health Education Assistance Loan, nondischargeable under 42 U.S.C. § 292f(g), into dischargeable debt by entering into a settlement agreement that is approved by the court pursuant to which the debtor consents to judgment against him).

The Debtor argues that *Brown* and *Archer* were cases under the fraud exception to discharge, cases over which bankruptcy courts have exclusive jurisdiction pursuant to § 523(c)(1),[4] and that this distinction makes a difference. The Com-

---

**4.** Section 523(c)(1) requires creditors to file suits objecting to dischargeability under § 523(a)(2) on grounds of fraud, under § 523(a)(4) on grounds of defalcation and em-

bezzlement, under § 523(a)(6) for willful and malicious injury, and under § 523(a)(15) for divorce property settlements.

monwealth disagrees. The Panel concludes that the rationale of *Brown* and *Archer* and their progeny are not limited to dischargeability proceedings over which bankruptcy courts have exclusive jurisdiction.

The Panel believes that creditors that succeed in reducing a claim to judgment should have their chances of recovery "enhanced rather than diminished" by the existence of that judgment. *See Roy,* 189 B.R. 245 (*citing In re Roland,* 65 B.R. 1003, 1005 (Bankr.D.Conn.1986)). Permitting the discharge of such judgments would only discourage creditors from reducing their claims to judgment. The Panel agrees with the Supreme Court's statement in *Brown* that "the mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt." *Brown,* 442 U.S. at 138, 99 S.Ct. 2205.

### *CONCLUSION*

For the reasons stated, we conclude that the bankruptcy court did not err in concluding that the Debtor's obligation did not lose its student loan characteristics when the Commonwealth obtained a default judgment based on the Debtor's nonpayment of her student loan obligation. Accordingly, the order of the bankruptcy court dismissing the Debtor's adversary proceeding is hereby **AFFIRMED.**