In re Sean L. DINAN, Stacey M. Dinan, Debtors.

Harry C. Fry, Plaintiff,

v.

Sean L. Dinan, Stacey M. Dinan, Defendants.

Bankruptcy No. 07–50089–GWZ.
Adversary No. 07–05073.

United States Bankruptcy Court, D. Nevada.

March 1, 2010.

Carole M. Pope, Clifton J. Young, Reno, NV, for Plaintiff.

Michael Lehners, Nathan R. Zeltzer, William D. Cope, Reno, NV, for Defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW and ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In Adv. No. 07–5073, trial of the matter was held on January 13, 2010, to deny Debtors' discharge under 11 U.S.C. § 727(a) and to have plaintiff's debt declared non-dischargeable under 11 U.S.C. § 523(a)(14). The plaintiff was represented by counsel Carole M. Pope and the defendants represented by counsel Michael Lehners. The Debtors were called as witnesses, as well as Melynda Mall and William Cope on the issues dealing with 727. At the conclusion of the evidence, the Court granted defendants motion for directed verdict on plaintiff's 727(a) claim for relief.

## FINDINGS OF FACT

The parties submitted Exhibit 1 as a written stipulation of agreed facts, to wit:

1. Dr. Fry had a security interest in construction equipment and motor vehicles.

2. The only Notification of Disposition of Collateral was sent to Dr. Fry to the Dinans on October 6, 2006.

3. The only written communications regarding this loan between Dr. Fry and the Dinans are:

   A. The November 16, 2005 letter

   B. The July 10, 2006 letter

   C. The letter dated August 10, 2005, but which was sent on August 4, 2006

   D. The October 6, 2006 Notice of Disposition of Collateral.

4. Dr. Fry had possession of the collateral which is itemized in the October 6, 2006 Notice of Disposition of Collateral on or before August 4, 2006.

5. The Dinans represented that they would use the loan proceeds for paying the IRS back taxes as well as business expenses.

6. The Dinans deposited the $165,000.00 into their bank account on October 13, 2003.

7. On that date there was a deficit in the checking account of $32,193.22.

8. Between October 13, 2003 and October 30, 2003 the Dinans made deposits from other sources which totaled $113,106.88.

9. Total checks and withdrawals from the checking account after October 13, 2003, but before October 30, 2003, totaled $115,738.77.

10. On October 30, 2003 the Dinans wrote a check to the IRS for $62,506.08.

11. On October 30, 2003 the Dinans wrote a second check to the IRS in the amount of $44,495.24.

12. The Dinans have no evidence to rebut a presumption that the collateral was worth $165,000.00.

13. The Dinans stipulate that Dr. Fry advertised the sale for three days in the Reno Gazette and posted signs for the sale on Toll Road and the entrance to Majestic Estates.

14. Dr. Fry claims the total deficiency owing to him is $193,477.36. The Dinans do not dispute the accounting, but claim they are not obligated to pay due to a legal defense which will be the subject of post trial briefs.

15. Dr. Fry claims that he attempted to retain an auction company to liquidate the collateral, but it refused to do so due to the condition of the collateral. The Dinans have no evidence to rebut this claim.

16. Dr. Fry has no evidence to prove that the loan was procured through fraudulent representations.

Exhibits 1–39 and 48 were admitted into evidence by stipulation of counsel.

The admissions and exhibits can be summarized as follows. The Debtors' chapter 7 case seeks to discharge the debt owed to Fry. The loan agreement for $165,000.00 was secured by construction equipment and automobiles. A UCC Financing Statement was duly filed in the Office of Nevada Secretary of State on 10/10/2003. The Dinans made loan payments of $2,252.23 per month through July 2005, when they defaulted on the loan. Sean Dinan conceded at trial that part of the loan proceeds, which totaled $104,861.83, were used to pay outstanding taxes due the Internal Revenue Service. Fry contends that after credit to Dinans of $16,000.00 interest payments, the total due Fry is $193,477.36, which includes a later advance of $1,500.00. That sum is not part of the original loan and security agreement.

## CONCLUSIONS OF LAW

Fry contends the amount loaned to Dinans for payment of federal taxes in the sum of $104,861.83 is non-dischargeable under § 523(a)(14). Dinans contend, after tracing of funds, the amount is $17,068.01. The second issue is whether Dinans are liable for any sum to Fry by reason of Nevada statutory provisions governing the disposition of collateral upon default of the loan.

Section 523(a)(14), enacted as part of the Bankruptcy Reform Act of 1994, was intended to facilitate the ability of individuals to borrow money to pay federal tax obligations. See, 140 Cong. Rec. H10,752, H10,769 (daily ed. Oct. 4, 1994), Pub.L. No. 103–394, § 221. As held in In re Cook, 416 B.R. 284, 288 (Bankr. W.D.Va.2009):

> Under section 523(a)(14) of the Bankruptcy Code a debtor cannot receive a discharge for a debt incurred to pay a tax to the Unites States if that tax would be nondischargeable under § 523(a)(1). 11 U.S.C. § 523(a)(14). One category of non-dischargeable taxes under § 523(a)(1) is specified in § 507(a)(8) of the Code, regardless of whether a claim for the tax was filed or allowed. 11 U.S.C. § 523(a)(1)(A). Section 507(a)(8) includes taxes which are "required to be collected or withheld and for which the debtor is liable in whatever capacity." 11 U.S.C. § 507(a)(8)(C). Therefore, if a debt was incurred to pay a tax that was required to be collected or withheld and the debtor is liable for that tax in some capacity, that debt is non-dischargeable.

The debt to Fry must have been incurred in part to pay taxes due the federal government by Dinans. Those payroll taxes are non-dischargeable under § 523(a)(1). If the debtor contends such tax debts are dischargeable under § 523(a)(1), the debtor is required to bring an action to determine such position. In re Barton, 321 B.R. 869, 873 (Bankr. N.D.Ohio 2004). I hold therefore that a portion of the loan proceeds made to the Debtors by Fry was for the purpose of payment of non-dischargeable tax obligations of the Debtors. Stipulated Facts 10 and 11 concede Dinans wrote checks to the IRS on October 30, 2003 for $62,506.08 and $44,495.24, totaling $107,001.32. Under § 523(a)(14), that sum is non-dischargeable to Fry. While Debtors' attempt to reduce such amount of $17,068.00 by the doctrine of tracing the IRS payments and FIFO, citing In re Christensen, 149 P.3d 40, 122 Nev. 1309 (2006), I reject such exercise as the uncontroverted facts show the payment of $107,001.34 was made within 17 days of receiving the loan proceeds from Fry. I further hold that sum is the total non-dischargeable debt due Fry, unless such sum is not a valid obligation due to violation by Fry of the Nevada UCC and NRS 104.9626 or NRS 482.516. Dinans contend Fry cannot claim a deficiency because Fry violated the foreclosure and sale provisions of Nev. 482.516.

UCC Article 9 provides a comprehensive scheme for the sale upon default of collateral subject to security interests in personal property and fixtures. NRS 104–9101–9709. NRS 104.9613 sets forth the contents and form of notification before disposition of collateral. Conversely, NRS 482.516–518 deal with repossession of vehicles and construction equipment. Construction equipment is defined to include all earth-moving, erecting, excavating and rigging machinery, whether self-propelled or towed and any auxiliary vehicles used for towing or transporting such machinery.

Under the UCC, every condition of sale upon foreclosure must be commercially reasonable, including proper giving

of notice of sale. If the creditor cannot prove compliance with Section 6 of Article 9, he cannot recover a deficiency. *See, e.g., In re Hull,* 155 B.R. 515, 516 (Bankr. W.D.Mo.1993); *In re Wilmington Hospitality LLC,* 320 B.R. 73, 76 (Bankr.E.D.Pa. 2005).

The Debtors concede that Fry complied with the notice and sale requirements of the Nevada UCC NRS 104.9613, and the stipulated facts confess the sale was conducted in a commercially reasonable manner. The critical legal issue is the application of NRS 482.5161 and NRS 482.16.

NRS 482.5151 says "All the provisions of NRS 482.516 apply equally to the repossession of any article of construction equipment pursuant to the security agreement."

NRS 482.516 provides as follows:

1. Any provision In any security agreement for the sale or lease of a vehicle to the contrary notwithstanding, at least 10 days' written notice of intent to sell or again lease a repossessed vehicle must be given to all persons liable on the security agreement. The notice must be given in person or sent by mail directed to the address of the persons shown on the security agreement, unless such persons have notified the holder in writing of a different address.

2. The notice:

(a) Must set forth that mere is a right to redeem the vehicle and the total amount required as of the date of the notice to redeem;

(b) May inform such persons of their privilege of reinstatement of the security agreement, if the holder extends such a privilege;

(c) Must give notice of the holder's intent to resell or again lease the vehicle at the expiration of 10 days from the date of giving or mailing the notice;

(d) Must disclose the place at which the vehicle will be returned to the buyer or lessee upon redemption or reinstatement; and

(e) Must designate the name and address of the person to whom payment must be made.

3. During the period provided under the notice, the person or persons liable on the security agreement may pay in full the indebtedness evidence by the security agreement. Such persons are liable for any deficiency after sale or lease of the repossessed vehicle only if the notice prescribed by this section is given within 60 days after repossession and includes an itemization of the balance and of any costs or fees for delinquency, collection or repossession. In addition, the notice must either set forth the computation or estimate of the amount of any credit for unearned finance charges or cancelled insurance as of the date of the notice or state that such a credit may be available against the amount due.

■ The facts show:

1. The Plaintiff had possession of the collateral on August 4, 2006.

2. The Plaintiff sent out his notice of intent to dispose of collateral on October 6, 2006, which is outside the 60 day limit in the statute.

3. The notice of disposition fails to state that there is a right to redeem the collateral.

4. The notice of disposition fails to disclosure the place at which the collateral may be redeemed.

5. The notice of disposition fails to include an itemization of the balance and of any costs or fees for delinquency, collection or repossession.

6. The notice of disposition fails to either set forth the computation or esti-

mate of the amount of any credit for unearned finance charges or cancelled insurance as of the date of the notice or state that such a credit may be available against the amount due.

The failure to comply with the statute operates as an absolute bar to the recovery of any deficiency. The Plaintiff is limited to the proceeds of the sale. *See Las Vegas Auto Leasing, Inc. v. Davis*, 643 P.2d 1217, 98 Nev. 169 (1982).

Fry concedes that the notice of sale did not comply with NRS 482.516 "as it fails to inform the Dinans of the right to redeem and the total amount to be paid to redeem, nor does it inform them of 'an intent to resell or again lease', and does not inform them of where the vehicle would be returned upon redemption nor does the notice state to whom the payments should be made. Furthermore, the sale did not occur within 60 days after repossession." In sum, the disposition of collateral complied with the UCC NRS 1041.9613, but not NRS 482.516.

Fry's argument is that NRS 482.516 does not apply to the foreclosure efforts employed by Fry in that it deals with sale or lease of repossessed vehicle. In sum, argues Fry, NRS 482.516 deals with the buyer of a motor vehicle, I.e., "any security agreement for the sale or lease of a vehicle," and its subsequent repossession upon default. So, since Fry did not sell Dinans any vehicles or construction equipment and never had possession of such vehicles and equipment until default occurred and collection began, the harmony between the 2 statutory schemes dictate that the UCC provisions on perfection of security interest in vehicles governs, and not the provisions dealing with sale or lease of vehicles and equipment. However, NRS 482.5161 specifically states: "All provisions of NRS 482.516 apply equally to the repossession of any article of construc-

tion equipment pursuant to the security agreement." This language specifically includes a loan transaction, where construction equipment and vehicles are taken as security for repayment.

By reason of such explicit financing language in the statute, NRS 482.516 was the applicable statutory remedy available to Fry's foreclosure upon default of the note to the exclusion of the NRS UCC provisions cited above. The failure to comply with NRS 482.516(3) has been held to be an absolute bart to collection of a deficiency upon foreclosure sale. *Las Vegas Auto Leasing v. Davis*, 98 Nev. 169, 643 P.2d 1217, 1218 (1982); *Nevada Power Co. v. Haggerty*, 115 Nev. 353, 989 P.2d 870 (Nev.1999) (specific statutory provisions govern over provisions which apply generally. Here, NRS 482.5161 specifically requires NRS 482.516 to apply only to motor vehicles and construction equipment, while the UCC is general to all items of personalty.)

The existence and enforceability of a debt to a creditor in a chapter 7 case is governed by state law. 11 U.S.C. § 502(b)(1) (a claim cannot be allowed if it is not enforceable under state law); *In re Miller*, 292 B.R. 409, 412 (9th Cir. BAP 2003). Applying such legal principles, the deficiency claim of Dr. Fry is not allowable under Nevada law for the reasons stated above. Fry is considered to have been paid in full upon the repossession and sale of the collateral despite the fact that the loan included a non-dischargeable portion under 523(a)(14).

**IT IS THEREFORE ORDERED** the clerk shall enter judgment for the defendants dismissing this adversary proceeding.