**In re Gary J. BACHINSKI and Lisa Bachinski, Debtors.**

**Simmons Capital Advisors, Ltd., Plaintiff,**

v.

**Gary J. Bachinski and Lisa Bachinski, Defendants.**

**Bankruptcy No. 07–50801.
Adversary No. 07–2153.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division,
at Columbus.

July 31, 2008.

Brandi L. Dorgan, Jerry L. Kaltenbach, Timothy E. Miller, Isaac, Brant, Ledman & Teetor, LLP, Christopher L. Lardiere, Columbus, OH, for Plaintiff.

Joseph C. Pickens, Chester, Willcox & Saxbe, LLP, Columbus, OH, for Defendants.

## MEMORANDUM OPINION ON MOTIONS FOR SUMMARY JUDGMENT

JOHN E. HOFFMAN JR., Bankruptcy Judge.

### I. Introduction

Approximately two and one-half years before they filed a joint Chapter 7 bankruptcy petition, Gary J. Bachinski and Lisa Bachinski ("Bachinskis," "Debtors" or "Defendants") formed a friendship and a business relationship with Robert Simmons ("Simmons"), the managing member of Simmons Capital Advisors, Ltd. ("Simmons Capital" or "Plaintiff"). By the time the Bachinskis commenced their bankruptcy case they owed Simmons Capital more than $200,000, and both the personal and business relationships had soured. To resolve their disputes, the parties entered into a settlement agreement ("Settlement Agreement"), which became effective less than three months before the Bachinskis sought bankruptcy relief. The Settlement Agreement resulted in the entry of a prepetition state court consent judgment in favor of Simmons Capital (as amended, "Amended Consent Judgment").

The parties' motions for summary judgment raise three issues: (1) whether either the Settlement Agreement and/or the Amended Consent Judgment establishes as a matter of law that the Bachinskis' debt to Simmons Capital is nondischargeable under 11 U.S.C. § 523(a)(2), (4) or (6); (2) whether Simmons Capital has failed as a matter of law to demonstrate the existence of the type of fiduciary relationship that will support a defalcation-based nondischargeability claim under § 523(a)(4); and (3) whether the purported deemed rejection of the Settlement Agreement by the Chapter 7 trustee would void or unwind transfers of property interests made by the parties pursuant to the Settlement Agreement prior to its rejection. For the reasons stated below, the Court concludes that: (1) neither the Settlement Agreement nor the Amended Consent Judgment renders the Bachinskis' debt nondischargeable as a matter of law; (2) the Bachinskis are entitled to summary judgment on Simmons Capital's defalcation claim under § 523(a)(4); and (3) even if the Settlement Agreement is executory, its rejection would not void or reverse transfers of property rights or interests made by the parties in accordance with the Settlement Agreement prior to its rejection.

### II. Jurisdiction

The Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

### III. Procedural Background

On February 6, 2007 ("Petition Date"), the Bachinskis filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On February 21, 2007, they filed their schedules of assets and liabilities (Doc. 17). On Schedule D—Creditors Holding Secured Claims—they character-

ized as disputed two debts owed to Simmons Capital: (1) a debt arising from a judgment lien in the amount of $150,000 against Debtors' real property located at 1393 Abbotsford Green Drive, Powell, Ohio; and (2) a debt arising from a judgment in the amount of $60,000, secured by a third mortgage on Debtors' real property located at 1245 Maple Road, Manistee, Michigan ("Manistee Property"). On Schedule F—Creditors Holding Unsecured Nonpriority Claims—they characterized as disputed a debt in the amount of $208,000 for a business loan from Simmons Capital. The Bachinskis included the Settlement Agreement on their Amended Schedule G—Executory Contracts and Unexpired Leases—filed on April 13, 2007 (Doc. 57).

Simmons Capital commenced this adversary proceeding by filing a complaint (Doc. 1) seeking a determination that the amounts due and owing under the Settlement Agreement should be excepted from discharge under § 523(a)(2)(A), (4) and (6). After a pretrial conference, the parties filed the following: (1) Plaintiff's Motion for Summary Judgment ("Plaintiff's Mot.") (Doc. 13); (2) Debtors' and Defendants' Gary J. and Lisa T. Bachinski's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Defendants' Mem. Opp'n") (Doc. 16); (3) Plaintiff's Reply to Debtors' and Defendants' Gary and Lisa Bachinski's Memorandum in Opposition ("Plaintiff's Reply") (Doc. 18); (4) Debtors' and Defendants' Gary and Lisa Bachinski's Motion for Summary Judgment ("Defendants' Cross–Mot.") (Doc. 14); (5) Plaintiff's Memorandum in Opposition to Debtors' and Defendants' Gary and Lisa Bachinski's Motion for Summary Judgment (Doc. 17) ("Plaintiff's Mem. Opp'n"); and (6) Debtors' and Defendants' Gary and Lisa Bachinski's Reply to Plaintiff's Memorandum in Opposition (Doc. 19).

## IV. Undisputed Facts

In August 2004, Simmons Capital and the Bachinskis entered into a contract under which Simmons Capital agreed to provide investment banking and turnaround management services to The Kendall Group, Ltd. ("Kendall"), a limited liability company in which the Bachinskis hold equity interests. After the Bachinskis executed a Revolving Cognovit Promissory Note in the amount of $150,000, which was dated August 12, 2004 ("Note"), Simmons Capital began advancing funds to Kendall and to the Bachinskis. Plaintiff's Mot., Ex. A; Defendants' Cross–Mot., Ex. C. In addition to the Note, the Bachinskis executed a mortgage in favor of Simmons Capital on the Manistee Property to secure the obligation due and owing under the Note. Plaintiff's Mot., Ex. B; Defendants' Cross–Mot., Ex. D.

Simmons Capital asserted that the Note matured on December 31, 2004, but that the Bachinskis failed to tender payment. Plaintiff's Mot., Ex. R, Robert M. Simmons Aff. at ¶¶ 13–15. Based on this alleged payment default, Simmons Capital commenced a lawsuit against the Bachinskis in the Court of Common Pleas, Franklin County, Ohio ("State Court") captioned *Simmons Capital Advisors, LTD. v. The Kendall Group, Limited, et al.*, Case No. 05 CVH 493 ("State Court Case"). *See id.* at ¶ 16. According to the Bachinskis, the State Court Case arose from a dispute between the parties over the payment of fees allegedly due and owing Simmons. Defendants' Cross–Mot., Gary J. Bachinski Aff. at ¶ 12; Lisa T. Bachinski Aff. at ¶ 12.

On October 4, 2006—two days before a scheduled jury trial in the State Court Case—the parties entered into the Settlement Agreement, effective as of November

9, 2006.[1] Under the terms of the Settlement Agreement the Bachinskis agreed, among other things, to: (1) entry of a consent judgment in the amount of $150,000; (2) not oppose the filing of an amended complaint ("Amended Complaint") by Simmons Capital; and (3) entry of an agreed order granting Simmons Capital leave to file the Amended Complaint. Settlement Agreement at ¶ 1. The original consent judgment entry was entered in the State Court Case on November 13, 2006. *See* Plaintiff's Mot., Ex. H. Subsequently, the parties executed the Amended Consent Judgment. Under the Amended Consent Judgment, the Bachinskis agreed to increase the judgment amount from $150,000 to $220,000. *See* Plaintiff's Mot., Ex. O; Defendants' Cross–Mot., Ex. F.

The Court need not detail the allegations the parties raise in their respective briefs regarding fraud and other conduct, particularly since those facts are in dispute. What is critical to a ruling on the motions, however, is the language of the Settlement Agreement and the Amended Consent Judgment. There is no dispute that the parties executed those documents.

Paragraph 1 of the Settlement Agreement provides, in relevant part, as follows: "Defendants acknowledge that the Amended Complaint includes allegations of fraud, and acknowledge and agree that the obligations imposed upon Defendants by this agreement shall be non-dischargeable in any bankruptcy, regardless of the party that is brought into bankruptcy and regardless of whether the bankruptcy is voluntary or involuntary."

▆ The Amended Consent Judgment makes no reference to the parties' agreement that the Bachinskis' debt to Simmons Capital would be deemed nondischargeable.[2] The Amended Consent Judgment, however, does state that:

> [T]his Court finds that [the Amended Complaint] alleges that the debts owed to Plaintiff by Defendants arise from a claim for money and services obtained by false pretenses, false representations, fraud or defalcation, and/or for willful and malicious injury by Defendants to Plaintiff and that the record reflects evidence of this claim.

The Amended Consent Judgment does not identify what part of the record "reflects evidence of this claim." In support of its allegation that "[t]he record reflects evidence of fraud[,]" Simmons Capital relies only on the Amended Complaint. *See* Plaintiff's Reply at 3.

### V. Arguments of the Parties

▆ Simmons Capital contends that the $220,000 debt due and owing under the Amended Consent Judgment is nondischargeable under 11 U.S.C. § 523(a)(2), (4) and (6) as a matter of law. *See* Plaintiff's Mot. at 2. In support of its position, Simmons Capital advances three arguments. First, it preemptively raises the doctrine of novation, which is the "substitution of a new contract, debt, or obligation for an existing one, between the same or different parties." *Jason v. Carpet Cleaning, Inc. (In re Jason)*, 2007 WL 4553608 at *4 (Bankr.E.D.Va. Dec.19, 2007). Apparently anticipating an argument from the Bachinskis that their obligations under the Settlement Agreement and the Amended

---

1. The Settlement Agreement is attached both to Plaintiff's Motion as Exhibit G and to Defendants' Cross–Motion as Exhibit E.

2. State courts do not have jurisdiction to rule on the nondischargeability of a debt under 11 U.S.C. § 523(a)(2), (4) or (6). *See Rein v. Providian Fin. Corp.*, 270 F.3d 895, 904 (9th Cir.2001); *Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 195 (6th Cir. BAP 2002).

Consent Judgment replaced, and thus wiped out, their purportedly nondischargeable obligations, Simmons Capital relies upon *Archer v. Warner*, 538 U.S. 314, 123 S.Ct. 1462, 155 L.Ed.2d 454 (2003), to counter the novation theory. According to Simmons Capital, "the [Amended] Consent Judgment ... and the Settlement Agreement reflect evidence of fraud. Therefore, in this case, based upon *Archer*, Plaintiff's claim for fraud retains its character, and [is] a non-dischargeable debt under 11 U.S.C. § 523(a)(2)(A)." Plaintiff's Mot. at 11. In response, the Bachinskis do not argue that the doctrine of novation automatically transforms nondischargeable obligations into dischargeable debts—an argument the Supreme Court rejected in *Archer*—but instead point out that application of *Archer* does not make a debt nondischargeable merely because it is the subject of a settlement agreement that references fraud. Defendants' Mem. Opp'n at 18–19. Rather, the Bachinskis maintain that "[w]ithout an establishment of fraud, the *Archer* decision does not even come into play." *Id.* at 19.

Second, Simmons Capital argues that the Court should except the Bachinskis' debt from discharge based on the doctrine of collateral estoppel. Under Simmons Capital's analysis, the Settlement Agreement and the Amended Consent Judgment each reflect the Bachinskis' agreement and the State Court's finding that "the record reflects evidence of fraud." *See* Plaintiff's Mot. at 11–12, 15. Thus, according to Simmons Capital, because the underlying state court judgment refers to allegations of fraud in the complaint, and because the Bachinskis agreed that their debt to Simmons Capital would be nondischargeable in any subsequent bankruptcy proceeding, principles of collateral estoppel should apply to preclude this Court from considering anything other than the Settlement Agreement and Amended Consent Judg-

ment in determining whether the debt should be excepted from discharge. *Id.* at 12–13. In response, the Bachinskis, relying on *Lichtenstein v. Barbanel (In re Lichtenstein)*, 161 Fed.Appx. 461 (6th Cir. 2005), assert that under Sixth Circuit authority, a prepetition waiver of discharge is unenforceable as against public policy. Defendants' Mem. Opp'n at 12. The Bachinskis also point out that the Amended Consent Judgment does not "recite any specific findings of fact as to any particular acts or conduct by the Debtors that constituted either 'fraud', 'defalcation', 'willful', or 'malicious' conduct. Thus, the entry provides no basis upon which the alleged findings of 'bad acts' were made." Defendants' Cross–Mot. at 5. Under Sixth Circuit law, the Bachinskis contend, the Amended Consent Judgment "does not meet the standards ... required for a state court judgment to have preclusive effect on the bankruptcy court regarding the nondischargeability of the debt." *Id.* at 13. Specifically, the Bachinskis argue that the "actually-litigated" element necessary for collateral estoppel to apply has not been established here. According to the Bachinskis, "[t]he conclusory statements contained in the Amended Consent Judgment Entry taken verbatim from the Settlement Agreement without the state court[ ] having made any specific findings of fact and conclusions of law ... cannot suffice to establish that the debt is nondischargeable." *Id.* at 14.

Third, again anticipating an argument by the Bachinskis, Simmons Capital contends that the Settlement Agreement is not an executory contract subject to rejection by the Chapter 7 trustee. Plaintiff's Mot. at 17–18. In response, the Bachinskis argue that the Settlement Agreement is an executory contract, and that, by operation of § 365(d)(1) of the Bankruptcy Code, the Trustee rejected it, thereby

freeing them from their waiver of dischargeability and any other obligations imposed by the agreement. Defendants' Mem. Opp'n at 14–16. Finally, the Bachinskis argue that Simmons Capital has failed as a matter of law to establish nondischargeability under § 523(a)(2), (4) or (6). *Id.* at 17–19.

## VI. Legal Analysis

### A. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), made applicable in this adversary proceeding by Fed. R. Bankr.P. 7056, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Novak v. MetroHealth Med. Ctr.,* 503 F.3d 572, 577 (6th Cir.2007). In reviewing a motion for summary judgment, the Court views the evidence, all facts, and any inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Novak,* 503 F.3d at 577; *Skowronek v. Am. S.S. Co.,* 505 F.3d 482, 484 (6th Cir.2007) (the court "must draw all reasonable inferences in favor of the nonmoving party").

" '[A]s to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.' " *Niecko v. Emro Mktg. Co.,* 973 F.2d 1296, 1304 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Novak,* 503 F.3d at 577 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Ransier v. Standard Fed. Bank (In re Collins),* 292 B.R. 842, 845 (Bankr.S.D.Ohio 2003).

The filing of cross-motions does not alter the standards governing the determination of summary judgment motions. *See Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991); *Collins,* 292 B.R. at 845. But " 'cross motions for summary judgment do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties.' " *Schafer v. Rapp (In re Rapp),* 375 B.R. 421, 428 (Bankr. S.D.Ohio 2007) (quoting *Greer v. United States,* 207 F.3d 322, 326 (6th Cir.2000)).

### B. Nondischargeability— § 523(a)(2)(A), (4) and (6)

In a dischargeability action the creditor bears the burden of proving each element of its claim by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 287–88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ("Because it seems clear that a preponderance of the evidence is sufficient to establish the nondischargeability of some of the types of claims covered by § 523(a), it is fair to infer that Congress intended the ordinary preponderance standard to govern the applicability of all the discharge exceptions." (footnote omitted)); *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 281 (6th Cir.1998). The Court must construe exceptions to discharge narrowly. *Rembert,* 141 F.3d at 281; *Ker v. Ker (In re Ker),* 365 B.R. 807, 812 (Bankr.S.D.Ohio 2007) ("In order to afford the honest but unfortunate debt-

or a fresh start, the Court narrowly construes exceptions to discharge.").

Simmons Capital first seeks a finding of nondischargeability pursuant to § 523(a)(2)(A), which provides in pertinent part as follows: "A discharge under section 727 ... of this title does not discharge an individual debtor from any debt— ... (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—(A) false pretenses, a false representation, or actual fraud...." 11 U.S.C. § 523(a)(2)(A). A debt is deemed nondischargeable under § 523(a)(2)(A) when a creditor establishes that:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert*, 141 F.3d at 280–81 (footnote omitted).

Simmons Capital also relies on § 523(a)(4), which prevents the discharge of a claim based on fraud or defalcation while the debtor is acting in a fiduciary capacity. In the Sixth Circuit, this section applies to "trustees who misappropriate funds held in trust, and not to those who failed to meet an obligation under a common law fiduciary relationship." *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 391 (6th Cir. 2005). To except a debt from discharge under § 523(a)(4)'s defalcation provision, the creditor must establish the existence of a fiduciary relationship arising from the presence of an express or technical trust. *Id.* at 391. *See also Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 639–40 (6th Cir.2007)

("The Sixth Circuit construes the term 'fiduciary capacity' found in the defalcation provision of § 523(a)(4) more narrowly than the term is used in other circumstances.... [W]e [have] adopted a narrow definition of the defalcation provision and held that it does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship. Accordingly, the defalcation provision applies to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." (citations and internal quotation marks omitted)), *cert. denied,* —— U.S. ——, 128 S.Ct. 2903, —— L.Ed.2d —— (2008).

In addition, Simmons Capital relies on § 523(a)(6), under which a plaintiff must establish that the debt arises from a "deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Applying *Geiger,* the Sixth Circuit has held that "unless 'the actor desires to cause [the] consequences of his act, or ... believes that the consequences are substantially certain to result from it,' Restatement (Second) of Torts § 8A, at 15 (1964), he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455, 464 (6th Cir.1999).

## C. The Waiver–of–Discharge Provision in the Settlement Agreement is Unenforceable and Does Not Render the Debt Nondischargeable.

Notwithstanding Simmons Capital's allegations to the contrary, *see* Plaintiff's Mot. at 15, nowhere in the Settlement Agreement did the Bachinskis agree that the record in the State Court Case con-

tains evidence of fraud. Rather, the Bachinskis agreed that the Amended Complaint included allegations of fraud and that their debt to Simmons Capital "shall be non-dischargeable in any bankruptcy...." Settlement Agreement at ¶ 1. The Bachinskis, though, now argue that this prepetition waiver of their discharge is unenforceable under *Lichtenstein*. The Court agrees.

 A debtor may waive the right to discharge a specific debt only under two circumstances. *See Hayhoe v. Cole (In re Cole)*, 226 B.R. 647, 653 (9th Cir. BAP 1998) ("Congress has only provided two methods for a debtor to waive the discharge of all debts or the dischargeability of specific debts [under] [s]ection 727 ... [and section] 524(c)." (citation omitted)). First, § 727(a)(10) permits the postpetition waiver of a discharge and states that "[t]he court shall grant the debtor a discharge, unless—... (10) the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter...." 11 U.S.C. § 727(a)(10). Second, a debtor may reaffirm a prepetition obligation, thereby waiving the ability to later discharge the debt. *See* 11 U.S.C. § 524(c). Neither of these statutory exceptions applies here, however, because the waiver of discharge reflected in the Settlement Agreement was made well before the Petition Date, and the Bachinskis did not seek to reaffirm the debt owed to Simmons Capital.

Aside from these two exceptions, the Sixth Circuit has held that waivers of the discharge contained in prepetition stipulations violate public policy and are unenforceable.

A pre-petition stipulation in a state-court action waiving a debtor's right to obtain a discharge of a specific debt in a future bankruptcy case is void because it offends the public policy of promoting a fresh start for individual debtors. Because it is executed before bankruptcy proceedings begin and is not approved by a bankruptcy court, such pre-petition waivers of discharge do not satisfy the statutory requirements for a waiver of discharge under § 727(a)(10).

*Lichtenstein*, 161 Fed.Appx. at 468.[3] Courts outside the Sixth Circuit also have held that a prepetition waiver of discharge entered into in a nonbankruptcy case is unenforceable. *See, e.g., Klingman v. Levinson*, 831 F.2d 1292, 1296 n. 3 (7th Cir. 1987) ("For public policy reasons, a debtor may not contract away the right to a discharge in bankruptcy."); *Cole*, 226 B.R. at 653 ("[A] state court stipulated judgment where the debtor waives his right to dis-

---

**3.** In *Lichtenstein*, the debtor had entered into a stipulated waiver of discharge with a creditor during his first bankruptcy case. The bankruptcy court approved the stipulation and the debtor ultimately received a discharge of his remaining debts. The debtor filed a second bankruptcy twelve years later and sought a determination that the debt under the original stipulation was subject to discharge. *Id.* at 463–64. The bankruptcy court dismissed the adversary and held that the debtor "waived his right to challenge the dischargeability of the debt ... when he entered into the Stipulation and it was approved by the Bankruptcy Court." *Id.* at 464 (internal quotation marks omitted). The district court and the Sixth Circuit affirmed the bankruptcy court's holding. The *Lichtenstein* court stated that when the debtor

> executed the written Stipulation and moved the bankruptcy court to enter an order approving that Stipulation, he intentionally and unequivocally relinquished his right to have the debt it addressed discharged in that first bankruptcy case. Accordingly, once the bankruptcy court approved the Stipulation of Nondischargeability and entered the Agreed Order on January 23, 1992, it became a valid waiver of discharge under § 727(a)(10).

*Id.* at 465.

charge is unenforceable as against public policy."); *Saler v. Saler (In re Saler)*, 205 B.R. 737, 745 (Bankr.E.D.Pa.1997) ("The public policy with regard to the provision of a 'fresh start' for debtors following bankruptcy cannot be precluded by a state court judgment. . . .").

The provision in the Settlement Agreement whereby the Bachinskis waived the dischargeability of the debt owed to Simmons Capital is unenforceable. The Settlement Agreement, therefore, does not establish as a matter of law that the Bachinskis' debt to Simmons Capital is nondischargeable.

## D. The Amended Consent Judgment Does Not Render the Debt Nondischargeable.

Simmons Capital also maintains that the Amended Consent Judgment conclusively establishes that the Bachinskis' debt is nondischargeable. None of the arguments advanced by Simmons Capital in support of its position has merit.

### 1. Purported Admission by the Bachinskis

■■■■ Simmons Capital contends that the Amended Consent Judgment is an admission by the Bachinskis that all the allegations of the Amended Complaint are true—allegations that, according to Simmons Capital, require a finding of nondischargeability. But unless it expressly so states, a consent judgment is not an admis-

sion of the allegations of the underlying complaint. *See Fizzinoglia v. Carrero (In re Carrero)*, 94 B.R. 306, 309 (Bankr. S.D.N.Y.1988) ("In a consent judgment the parties may agree to relief broader than that the court could have awarded after trial. . . . [T]he Consent Decree is not an admission of liability on the merits . . . ." (citation omitted)). *Cf. Sierra Club v. Hamilton County Bd. of County Comm'rs*, 504 F.3d 634, 652 n. 8 (6th Cir.2007) ("[A] consent decree does not always include an admission of liability by the defendant . . . ." (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 604, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001))).[4] The Amended Consent Judgment does not include any admission of liability. It merely states that the Amended Consent Judgment contains allegations that the debts arise from a claim of fraudulent conduct and that the record reflects evidence of this claim. The Court, therefore, rejects Simmons Capital's argument that the Bachinskis have admitted the allegations contained in the Amended Complaint.

### 2. Collateral Estoppel/Issue Preclusion

■■■■ In addition, Simmons Capital relies on the doctrine of collateral estoppel, also known as issue preclusion.[5] The doctrine applies in the context of dischargeability litigation. *See Rally Hill Prods., Inc. v. Bursack (In re Bursack)*, 65 F.3d

---

**4.** *But see In re Nadler*, 424 F.Supp. 1106, 1107–08 (E.D.Mo.1976) ("The [debtors] contend that the consent judgment obtained only evidences the debt and in no way admits any wrongdoing by them. The Bankruptcy Court pointed out the repeated instances in which the plaintiffs to the civil action pleaded fraudulent acts and representations by the [debtors] which were made the basis of the consent judgment signed in 1973. This Court agrees with the conclusion of the Bankruptcy Court

and finds this agreement to be the equivalent of an admission by the [debtors].").

**5.** "[T]he United States Supreme Court has expressed a preference for use of the terms 'issue preclusion' and 'claim preclusion' rather than the traditional phrases 'res judicata' and 'collateral estoppel.'" *Wagner v. Schulte (In re Schulte)*, 385 B.R. 181, 189 n. 5 (Bankr. S.D.Ohio 2008) (citing *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 702–03 (6th Cir.1999)).

51, 53 (6th Cir.1995) ("The doctrine of collateral estoppel applies in dischargeability actions under 11 U.S.C. § 523(a)." (citing *Grogan*, 498 U.S. at 284 n. 11, 111 S.Ct. 654)). The fact that bankruptcy courts have "exclusive jurisdiction over dischargeability issues does not alter this rule." *Id.* at 53. *See also Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) ("[A] state court judgment may in some circumstances have preclusive effect in a subsequent action within the exclusive jurisdiction of the federal courts."); *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir.1981) ("[T]hat Congress intended the bankruptcy court to determine the final result—[of] dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts."). The party seeking to invoke issue preclusion has the burden of establishing its applicability. *Hinze v. Robinson (In re Robinson)*, 242 B.R. 380, 385 (Bankr.N.D.Ohio 1999).

 State law dictates whether a state court judgment should be afforded issue-preclusive effect. *See Ed Schory & Sons, Inc. v. Francis (In re Francis)*, 226 B.R. 385, 388 (6th Cir. BAP 1998) ("The Sixth Circuit has held that the application of collateral estoppel in a nondischargeability action depends upon whether the applicable state law would give collateral estoppel effect to the judgment." (citing *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir.1997))). The law of the state where the judgment was entered—here, Ohio—is controlling. *See Calvert*, 105 F.3d at 319. In Ohio, issue preclusion applies where:

1) [There is a] final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; 2) The issue [was] actually and directly litigated in the prior suit and must have been necessary to the final judgment; 3) The issue in the present suit [is] identical to the issue in the prior suit; [and] 4) The party against whom estoppel is sought was a party or in privity with the party to the prior action.

*Sweeney*, 276 B.R. at 189 (quoting *Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 921 (6th Cir. BAP 2000)). *See also Rapp*, 375 B.R. at 429 ("Courts apply issue preclusion 'when a fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom [issue preclusion] is asserted was a party in privity with a party to the prior action.'" (quoting *Fordu*, 201 F.3d at 704 (alteration in original))).

 As an initial matter, the Court concludes that Simmons Capital has satisfied the first and fourth elements of the four-prong test set forth in *Sweeney*. The Amended Consent Judgment is a final judgment on the merits rendered in the State Court Case after a full and fair opportunity to litigate the issues. And the parties in this proceeding against whom Simmons Capital seeks to invoke issue preclusion—the Bachinskis—are the same defendants who appeared in the State Court Case. Determining whether the second prong of the issue-preclusion test has been established in this case—which requires a showing that the issue before the Court was "actually and directly litigated" and "necessary to the final judgment"—is not as straightforward.[6]

---

**6.** As explained below, because Simmons Capital cannot meet the second prong necessary for collateral estoppel to apply, the Court need not address whether the issues in this adversary proceeding are identical to those in the State Court Case.

The issue of whether consent judgments have issue-preclusive effect has divided the courts, and the crux of the dispute is whether the actually-and-directly-litigated prong is satisfied in the context of judgments entered without a trial. Courts have split into three camps on this question: (1) yes, (2) no and (3) only if the parties clearly express their intent that the consent judgment is to have issue-preclusive effect. *See generally* Sheldon R. Shapiro, *Modern Views of State Courts as to Whether Consent Judgment Is Entitled to Res Judicata or Collateral Estoppel Effect,* 91 A.L.R.3d 1170 (1979). The United States Supreme Court has, as a matter of federal law, come down squarely in the "no-preclusive-effect" camp. *See Arizona v. California,* 530 U.S. 392, 414, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) ("It is the general rule that issue preclusion attaches only '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment.' Restatement (Second) of Judgments § 27, p. 250 (1982). 'In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section [describing issue preclusion's domain] does not apply with respect to any issue in a subsequent action.' *Id.,* comment e, at 257." (alteration in original)).

If the Amended Consent Judgment had been issued by a federal court, the Court would apply federal law regarding the issue-preclusive effect of the judgment. *See Moffitt,* 252 B.R. at 921 n. 4 ("The Sixth Circuit, when faced with determining the issue-preclusive effect of a prior federal court judgment, has followed the majority rule and applied federal law."). But in choosing which approach it must follow in the context of a judgment issued by a state court, the Court must

look to state, not federal common law. *See Marrese,* 470 U.S. at 380, 105 S.Ct. 1327; *Calvert,* 105 F.3d at 317.

In Ohio, whether a factual issue that is incorporated into a consent judgment is deemed actually litigated and determined by a court of competent jurisdiction appears to be an unsettled question. *Compare N. Am. Sci. Ass'n, Inc. v. Clark (In re Clark),* 222 B.R. 114, 117 (Bankr. N.D.Ohio 1997) (Ohio law "clearly allows for ... consent judgments to be given preclusive effect."), *and Columbus v. Alden E. Stilson & Assocs.,* 90 Ohio App.3d 608, 630 N.E.2d 59, 63 (1993) ("Under Ohio law, a consent judgment has the same binding effect as one entered by the court after summary adjudication or full trial."), *with Fordu,* 201 F.3d at 704 ("Although the issue of the fairness of the property division ... was the subject of a recitation contained in the Dissolution Decree, it was not actually litigated in the dissolution proceeding. Absent a judgment following actual litigation, the Dissolution Decree cannot be accorded issue-preclusive effect. [B]ecause ... no substantive factual issues were adjudicated in the Ohio court, Ohio's issue preclusion principles are not relevant to this case." (citation and internal quotation marks omitted)), *and Kissinger v. Pavlus,* 2002 WL 1013085 at *2 (Ohio App. May 21, 2002) ("Collateral estoppel does not apply to plaintiffs' claims because the decedent did not actually and directly litigate the prior action [but instead] resolved the matter ... through settlement, not litigation."). This split of authority does not impede the Court's analysis here because, as explained below, the particular consent judgment under consideration does not contain adequate findings to preclude the litigation of any relevant issue.

"Where a state court determines factual questions using the same standards as the bankruptcy court would

use, collateral estoppel should be applied to promote judicial economy by encouraging the parties to present their strongest arguments." *Klingman*, 831 F.2d at 1295. But when reviewing the preclusive effect of a state court judgment, the Court must be mindful that:

> [w]here the language of Congress indicates a policy referring to broader construction of the statute than the state decisions were giving, federal courts cannot be [precluded] by them. The Congress has clearly expressed the requirements for determining whether or not a given debt is dischargeable by enacting a statutory scheme set forth under § 523(a) of the Bankruptcy Code. Those requirements cannot be abridged in the absence of specific findings and/or legal conclusions.

*Aristocrat Lakewood Nursing Home v. Dryja (In re Dryja)*, 259 B.R. 629, 634 (Bankr.N.D.Ohio 2001) (citations and internal quotation marks omitted). The Court accordingly must determine whether the Amended Consent Judgment contains sufficient findings of fact or conclusions of law "to preclude the relitigation of any issue pertinent to a dischargeability action." *Id.* at 634; *Schulte*, 385 B.R. at 189 ("[T]he whole premise of collateral estoppel is that once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed." (internal quotation marks omitted)).

To reiterate, the pertinent sentence in the Amended Consent Judgment ("Finding Provision") states:

> [T]his Court finds that [the Amended Complaint] alleges that the debts owed to Plaintiff by Defendants arise from a claim for money and services obtained by false pretenses, false representations, fraud or defalcation, and/or willful and malicious injury by Defendants to Plaintiff and that the record reflects evidence of this claim.

For several reasons, the Court concludes that this language does not constitute a sufficient finding of fact or conclusion of law to support a determination as a matter of law that the Bachinskis' debt is nondischargeable under § 523(a)(2), (4) and/or (6).[7] First, the Finding Provision is ambiguous.[8] The Court recognizes "the

---

7. Throughout the Plaintiff's Motion there are numerous references to the alleged nondischargeability of the debt under § 523(a)(4) and (6), but in its conclusion Simmons Capital states only that "Plaintiff has met the requirements of 11 U.S.C. § 523(a)(2)(A), and the debt remains non-dischargeable." Plaintiff's Mot. at 20. Moreover, although the Amended Consent Judgment reflects an agreement that the Amended Complaint "alleges that the debts owed to Plaintiff by Defendants arise from a claim for ... defalcation, and/or willful and malicious injury by Defendants to Plaintiff[,]" Simmons Capital did not allege defalcation or willful and malicious injury in the Amended Complaint. *See* Plaintiff's Mem. Opp'n, Ex. 1, Amended Complaint.

8. The dispute over the meaning of the Settlement Agreement and the Amended Consent Judgment is akin to a contractual dispute.

*See Liberte Capital Group, LLC v. Capwill*, 99 Fed.Appx. 627, 633 (6th Cir.2004) ("[A]greed orders and consent decrees ... are contractual in nature and therefore governed by principles of contract interpretation."). And "summary judgment is permissible when the language of the contract is unambiguous, or, if the language is ambiguous, where extrinsic evidence leaves no genuine issue of material fact and permits interpretation of the agreement as a matter of law." *Reardon v. Kelly Servs., Inc.*, 210 Fed.Appx. 456, 458 (6th Cir. 2006). "[I]f the language of a written contract is subject to two or more reasonable interpretations or is inconsistent on its face, the contract is ambiguous, and a factual development is necessary to determine the intent of the parties." *Id.* at 459 (internal quotation marks omitted). "Nevertheless, if a contract, however inartfully worded or clumsily arranged, fairly admits of but one interpretation it may not be said to be ambig-

difficulties experienced in attempting to be precise when using the English language" and acknowledges that those difficulties "do not mean that the courts should automatically find contracts or statutes to be ambiguous." *Winningham v. Sexton*, 820 F.Supp. 338, 342 (S.D.Ohio 1993), *aff'd*, *Winningham v. N. Am. Res. Corp.*, 42 F.3d 981 (6th Cir.1994). Although typically "words, sentences, and documents have a plain meaning," *id.*, the same cannot be said of the Finding Provision. The Finding Provision's lack of clarity stems from a structural ambiguity. *See* Sanford Schane, *Ambiguity and Misunderstanding in the Law*, 25 T. Jefferson L.Rev. 167, 171 (Fall 2002) (explaining that structural ambiguity arises "whenever a given order of words may allow for more than one grammatical relationship"). To illustrate the structural ambiguity inherent in the Finding Provision, the Court has reproduced below two versions of the provision, which include an added **[A]** and **[B]**, with the only difference between them being the placement of the added **[A]**:

1. Further, this Court finds **[A]** that [the Amended Complaint] alleges that the debts owed to Plaintiff by Defendants arise from a claim for money and services obtained by false pretenses, false representations, fraud or defalcation, and/or willful and malicious injury by Defendants to Plaintiff and **[B]** that the record reflects evidence of this claim.

2. Further, this Court finds that [the Amended Complaint] alleges **[A]** that the debts owed to Plaintiff by Defendants arise from a claim for money and services obtained by false pretenses, false representations, fraud or defalcation, and/or willful and malicious injury by Defendants to Plaintiff and **[B]** that the record reflects evidence of this claim.

Under the interpretation of the Finding Provision set forth in paragraph 1 above, the sentence reads the way Simmons Capital says it should—i.e., the State Court *makes two findings:* (1) that the Amended Complaint alleges a claim and (2) that the record reflects evidence of the claim. Under the interpretation of the Finding Provision set forth in paragraph 2—an equally valid construction—the State Court *finds that the Amended Complaint alleges two things:* (1) that the Bachinskis' debt arises from a claim for money and services obtained in a certain way and (2) that the record reflects evidence of the claim. In light of this structural ambiguity, it is far from clear that the State Court found evidence of fraud or any other facts that would support a judgment of nondischargeability.

 Moreover, the Finding Provision's use of the words "reflects evidence of" limits its preclusive effect. With the exception of entirely frivolous lawsuits, the record often will reflect at least some evidence of the plaintiff's claim. The existence of some evidence, however, is not the equivalent of a finding of fact or conclusion of law in favor of the plaintiff. *See Pham v. Baccam*, 178 B.R. 528, 529 (M.D.Fla. 1995) ("Regardless of whether some evidence is presented that tends to prove fraud on the part of the debtor, if the

uous or, indeed, fatally unclear." *Id.* (internal quotation marks omitted); *see also Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421–22 (6th Cir. 2008) ("Ambiguity exists if the language is susceptible to two or more reasonable interpretations.... If a contract contains ambiguities, it generally becomes the task of the factfinder to use extrinsic evidence to determine the intent of the parties." (citations and internal quotation marks omitted)).

creditor does not meet the requisite burden of proof, the debt may be declared dischargeable."), *aff'd*, 92 F.3d 1198 (11th Cir.1996). A creditor seeking to except a debt from discharge carries the burden of proving its case by a preponderance of the evidence. *See Rembert*, 141 F.3d at 281. The Amended Consent Judgment's statement that the record "reflects evidence" of the alleged wrongdoing does not establish that Simmons Capital has met this burden. *Cf. Beach v. Humphreys*, 845 F.2d 325 (table), 1988 WL 35266 at *6 (6th Cir.1988) (distinguishing "some evidence" from the evidence required by the preponderance-of-the-evidence standard); *Axcess Broad. Servs., Inc. v. Donnini Films*, 2006 WL 2679982 at *4 (N.D.Tex. Sept.18, 2006) ("While there is some evidence ... this evidence does not rise to the level of a preponderance of the evidence."). Simmons Capital cannot bootstrap the words "reflects evidence of" into a finding of fact or conclusion of law that would have issue-preclusive effect.

The Finding Provision fails Simmons Capital for yet another reason: the provision's use of the phrase "and/or" casts doubt on whether a determination of fraud—or an alternative finding—was "necessary to the final judgment." Assuming that the Finding Provision means what Simmons Capital argues—that the State Court found that the Bachinskis' debt arose from a claim for money and services "obtained by false pretenses, false representations, fraud or defalcation, *and/or* willful and malicious injury by Defendants to Plaintiff[,]" (emphasis added)—the Court can conclude that the State Court found that the debt arose from a claim based on some, possibly all, but perhaps only one of the enumerated causes of action. *Cf. Detroit Water Team Joint Venture v. Agric. Ins. Co.*, 371 F.3d 336, 342 (6th Cir.2004) ("[W]e hold that the use of the and/or language ... unambiguously

means that the exclusion applies if either or both of the two specified conditions are met.... There are occasions where intent may properly be expressed by and/or, indicating both, or either." (citations and internal quotation marks omitted)). And that is the problem. For example, the Finding Provision could legitimately be read to mean that the State Court found evidence of defalcation only and none of the other enumerated claims. But defalcation, standing alone, at least as that term is commonly understood and defined, will not necessarily give rise to a nondischargeable debt under § 523(a)(4). *See R.E. Am., Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir.1997) ("In holding that [the] debt ... was the result of defalcation, the bankruptcy court referenced the Sixth Edition of *Black's Law Dictionary*, which broadly defines defalcation as, *inter alia*, 'failure to meet an obligation' while acting in a fiduciary capacity. We find that the bankruptcy court erred in relying upon this dictionary definition of defalcation because the dictionary definition improperly expands upon our previous definition of the term.... The mere failure to meet an obligation while acting in a fiduciary capacity simply does not rise to the level of defalcation; an express or technical trust must also be present." (citations omitted)).

■ A judgment does not have issue-preclusive effect if it makes several findings of fact or conclusions of law in the disjunctive and at least one of the alternative findings is insufficient to support a nondischargeability judgment. Under that scenario, the alternatives that might otherwise have supported nondischargeability are not "necessary to the final judgment" and issue preclusion, therefore, cannot apply. In the end, then, Simmons Capital fails to demonstrate that the allegations in the State Court original complaint or the

Amended Complaint and the broad, conclusory language contained in the Amended Consent Judgment sufficiently establish what is required to support a finding of nondischargeability. *See generally Cole*, 226 B.R. at 655 (applying issue preclusion to stipulated judgment only when "the parties stipulate[ ] to the underlying facts that support a finding of nondischargeability"); *114 Kimbell Square, Ltd. v. Ritter*, 2007 WL 1660676 at *4 (N.D.Tex. June 8, 2007) (" '[C]ollateral estoppel applies in bankruptcy courts only if ... the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question ... and facts supporting the court's findings are discernible from that court's record.' " (quoting *Dennis v. Dennis (In re Dennis)*, 25 F.3d 274, 278 (5th Cir.1994))); *Giaimo v. Detrano (In re Detrano)*, 266 B.R. 282, 291 (E.D.N.Y.2001) (finding that the debtor "did not stipulate to any underlying facts that would establish that the debt was nondischargeable"), *aff'd*, 326 F.3d 319 (2d Cir.2003); *Dryja*, 259 B.R. at 634 (refusing to apply collateral estoppel to a stipulated judgment when "the judgment in the underlying state court action does not set forth sufficient factual findings or legal conclusions to allow [the] Court to preclude the relitigation of any issue pertinent to a dischargeability action"); *Smith v. Smith (In re Smith)*, 189 B.R. 240, 244 (Bankr.D.N.H.1995) (requiring a consent judgment to "contain detailed facts sufficient as findings to meet the federal test of nondischargeability so that the bankruptcy court is able to discern from the record the elements of collateral estoppel" (internal quotation marks omitted)); *Doug Howle's Paces Ferry Dodge, Inc. v. Ethridge (In re Ethridge)*, 80 B.R. 581, 587 (Bankr.M.D.Ga.1987) (making independent findings when the consent judgment "does not contain any findings of fact [or] ... [does not] provide that it is to have collateral estoppel effect").

### 3. *Archer v. Warner*

In attempting to establish as a matter of law that the Bachinskis' debt arises from fraudulent conduct and thus is excepted from discharge by § 523(a)(2)(A), Simmons Capital relies heavily on *Archer*. Indeed, a substantial portion of Simmons Capital's memorandum in support of its motion for summary judgment is devoted to an extended discussion of *Archer*. *See* Plaintiff's Mot. at 10–18. As explained below, however, Simmons Capital's reliance on *Archer* is misplaced.

In *Archer*, the debtors—Leonard and Arlene Warner—sold a company to the Archers for $610,000. Soon after the sale, the Archers sued the Warners for fraud committed in connection with the sale. The parties settled the litigation and the Warners agreed to pay $300,000 "as compensation for emotional distress/personal injury type damages." *Archer*, 538 U.S. at 317, 123 S.Ct. 1462 (internal quotation marks omitted). The Warners paid $200,000 and executed a promissory note for the balance. In exchange, the Archers executed releases discharging the Warners from all claims except those due under the promissory note. There was no admission of liability or wrongdoing by the parties and the Archers dismissed the lawsuit with prejudice. *Id.*

The Warners did not make any payments under the promissory note and the Archers again sued them in state court to collect the debt. The Warners responded by filing a Chapter 7 case. The Archers requested that the bankruptcy court determine that the $100,000 that remained due under the promissory note was nondischargeable. Mr. Warner consented to the nondischargeability of the claim; Mrs. Warner, however, contested the issue. *Id.*

at 317–18, 123 S.Ct. 1462. The bankruptcy court held that the debt was dischargeable. The district court affirmed, as did the court of appeals. The court of appeals reasoned that:

> the settlement agreement, releases, and promissory note had worked as a kind of "novation." This novation replaced (1) an original potential debt to the Archers for money obtained by fraud with (2) a new debt. The new debt was not for money obtained by fraud. It was for money promised in a settlement contract.

*Id.* at 318, 123 S.Ct. 1462.

The Supreme Court determined that the settlement agreement left only one debt—for the money promised under the agreement. But it concluded that "the same debt [could] *also* amount to a debt for *money obtained by fraud*, within the terms of the nondischargeability statute." *Id.* at 319, 123 S.Ct. 1462. Relying on its decision in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the Supreme Court rejected the court of appeal's novation theory, reasoning: "If the Fourth Circuit's view were correct—if reducing a fraud claim to settlement definitively changed the nature of the debt for dischargeability purposes—the nature of the debt in *Brown* would have changed similarly, thereby rendering the debt dischargeable." *Archer*, 538 U.S. at 320, 123 S.Ct. 1462. Thus, according to the Supreme Court, "[a] debt embodied in the settlement of a fraud case 'arises' no less 'out of' the underlying fraud than a debt embodied in a stipulation and consent decree." *Id.* at 321, 123 S.Ct. 1462. Ultimately, the Supreme Court held that the "settlement agreement and releases may have worked a kind of novation, but that fact does not bar the Archers from showing that the settlement debt arose out of 'false pretenses, a false representation, or actual fraud,' and consequently is nondischargeable, 11 U.S.C. § 523(a)(2)(A)." *Id.* at 323, 123 S.Ct. 1462.

Although the Bachinskis do not affirmatively raise the novation defense—or even cite *Archer* in their cross-motion for summary judgment—Simmons Capital attempts to turn the tables and make offensive use of the novation doctrine. Although its argument is less than clear, Simmons Capital seems to suggest that the fact that the Bachinskis' debt is the subject of the Settlement Agreement and Amended Consent Judgment conclusively establishes the debt's nondischargeability under § 523(a)(2)(A). *See* Plaintiff's Mot. at 11 ("Here, the [Amended Consent Judgment] and the Settlement Agreement reflect evidence of fraud. Therefore, in this case, based upon *Archer*, Plaintiff's claim for fraud retains its character, and becomes non-dischargeable under 11 U.S.C. § 523(a)(2)(A)."); Plaintiffs' Reply at 4 ("*Archer* and *Brown* remain good case law, and provide the backbone for this Court to base its decision [on]."); Plaintiff's Mem. Opp'n at 12 ("Regardless of the form of fraud, *Archer* requires this Court to determine the debt to be non-dischargeable."). In response, the Bachinskis argue that "[w]ithout an establishment of fraud," the *Archer* decision has no application. Defendants' Mem. Opp'n at 19. The Court agrees. Having failed to show that the Bachinskis debt is nondischargeable as a matter of law—based upon the application of preclusion principles or otherwise—Simmons Capital cannot tenably maintain that the debt must be excepted from discharge under § 523(a)(2)(A) simply because it was made the subject of the Settlement Agreement and Amended Consent Judgment.

Simmons Capital cites *Archer* for the proposition that the contractual

doctrine of novation does not operate so as to alter the nature of a debt for dischargeability purposes—a proposition with which the Bachinskis do not take issue and that is now firmly established in the caselaw. *See Burrell–Richardson v. Mass. Bd. of Higher Educ. (In re Burrell–Richardson)*, 356 B.R. 797, 802 (1st Cir. BAP 2006) ("[R]educing a fraud claim to a settlement does not definitively change the nature of the debt for dischargeability purposes."); *Ramey v. Barton (In re Barton)*, 321 B.R. 869, 874 (Bankr.N.D.Ohio 2004) ("[T]his Court has previously addressed and then rejected the position that the execution of a subsequent agreement can substitute an otherwise nondischargeable debt for a dischargeable debt—put in the vernacular, a tiger does not change its stripes."). But, *Archer* does not, as Simmons Capital seems to suggest, establish that a debt allegedly arising from fraudulent conduct, which is made the subject of a settlement agreement, is ipso facto nondischargeable under § 523(a)(2)(A). Put differently, *Archer* permits a creditor to demonstrate that the debt underlying a settlement arises out of fraud, false pretenses or false representation, but it does not relieve a creditor of meeting its burden under § 523(a)(2)(A). *See Archer*, 538 U.S. at 323, 123 S.Ct. 1462; *Burrell–Richardson*, 356 B.R. at 802 ("[T]he party asserting nondischargeability is left with the ability to demonstrate that the settlement debt is a debt for money obtained by fraud in the context of [a] § 523(a)(2)(A) proceeding. In other words, creditors are free to look beyond a settlement to determine the character of the debt." (citation omitted)).

In sum, as discussed above, Simmons Capital has failed to demonstrate that either the Amended Consent Judgment or the Settlement Agreement provides a basis for the Court to determine as a matter of law that the Bachinskis' debt arises out of fraud, false pretenses or false representa-tion. Having failed to establish as a matter of law that the Bachinskis' debt is excepted from discharge by § 523(a)(2)(A), Simmons Capital can find no refuge in the *Archer* decision, which does not relieve a creditor from the burden of establishing the nondischargeable character of an obligation arising under a settlement agreement. Thus, whether the Bachinskis' debt should be excepted from discharge by § 523(a)(2)(A) remains an issue for trial.

### E. The Bachinskis are Entitled to Summary Judgment Under § 523(a)(4).

As explained above, § 523(a)(4) excepts from discharge debts "for fraud or defalca-tion while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). *See also supra* Part VI.B. Simmons Capital does not allege embezzle-ment or larceny. Rather, the only compo-nent of § 523(a)(4) on which Simmons Capital relies is "fraud or defalcation."

■ A debt for fraud or defalcation is nondischargeable only if it occurs while the debtor was "acting in a fiduciary ca-pacity[.]" 11 U.S.C. § 523(a)(4). The Amended Consent Judgment, though, makes no reference to the Debtors acting in any fiduciary capacity, and the facts Simmons Capital alleges are insufficient as a matter of law to support a finding of such capacity. Simmons Capital alleges that the Bachinskis were "personal friends" of Simmons who "abused this re-lationship" and also alleges that the parties had a contractual relationship. Neither friendship nor contract alone, however, gives rise to a fiduciary capacity, which instead, as discussed above, requires the existence of an express or technical trust. Simmons Capital does not allege the exis-tence of any such trust. Because Simmons Capital has failed to make a showing suffi-cient to establish an express or technical

trust, which is an element essential to its case under § 523(a)(4), the Bachinskis are entitled to summary judgment on Simmons Capital's § 523(a)(4) claim.[9]

## F. Rejection of the Settlement Agreement Does Not Void Property Interests Already Obtained by the Parties Under the Contract.

 Relying on § 365(d)(1), the Bachinskis argue that the Settlement Agreement is an executory contract that was deemed rejected when the Chapter 7 trustee did not assume or reject the agreement within 60 days of the Petition Date.[10] The Bachinskis assert in their filings that the deemed rejection of the Settlement Agreement relieves them of the Settlement Agreement's nondischargeability clause. During a status conference with the Court they also contended that the rejection invalidated the deed conveying the Manistee Property to Simmons Capital, thereby returning ownership of the property to them. Even if the Settlement Agreement is an executory contract subject to rejection,[11] the Bachinskis' position concerning the effect of its rejection is flatly wrong.

**9.** The Bachinskis are not entitled to summary judgment on Simmons Capital's § 523(a)(2)(A) and (6) claims because there exist disputed issues of material fact, including the Bachinskis' intent and state of mind. *See Behler–Young Co. v. Cousino (In re Cousino)*, 364 B.R. 289, 296 (Bankr.N.D.Ohio 2006) ("[S]tate of mind issues, such as fraudulent intent under § 523(a)(2)(A), are generally not appropriate for resolution on summary judgment ...." (internal quotation marks omitted)); *The Bank of Kentucky, Inc. v. Ruhe (In re Ruhe)*, 2005 WL 4030037 at *2 (Bankr. S.D.Ohio June 21, 2005) ("[C]onsidering the element of intent involved in [a § 523(a)(6)] claim, this Court is satisfied that resolution of this claim by summary judgment is inappropriate." (internal quotation marks omitted)).

**10.** Section 365(d)(1) states:
In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such contract or lease is deemed rejected.
11 U.S.C. § 365(d)(1).

**11.** The Sixth Circuit has applied "the traditional [Countryman] definition of an executory contract...." *In re Structurlite Plastics Corp.*, 86 B.R. 922, 926 (Bankr.S.D.Ohio 1988). The Countryman definition makes executory any contract under which "the obligation[s] of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Id.* at 925 (internal quotation marks omitted). *See also Terrell v. Albaugh (In re Terrell)*, 892 F.2d 469, 471 n. 2 (6th Cir.1989); *O'Brien v. Ravenswood Apartments, Ltd. (In re Ravenswood Apartments, Ltd.)*, 338 B.R. 307, 311 (6th Cir. BAP 2006). Unless the purported executory contract expressly defines a particular breach as being material, materiality is a factual issue (as to the parties' intent) and therefore is inappropriate for summary judgment. *See DeBoer Structures (U.S.A.) Inc. v. Shaffer Tent & Awning Co.*, 233 F.Supp.2d 934, 956–57 (S.D.Ohio 2002) (materiality of breach is fact issue warranting denial of summary judgment); *O'Brien v. Ohio State Univ.*, 2005 WL 1532341 at *5 (Ohio Ct.Cl. June 22, 2005) ("[T]he determination whether a material breach of an agreement has occurred is generally a question of fact. It is only where a contract is clear in making a certain event a material breach of that contract, that a court must respect that contractual provision." (citations omitted)). Nothing in the Settlement Agreement specifies what would constitute a material breach that would excuse performance of the nonbreaching party. The Court, therefore, is not in a position to rule on whether the Settlement Agreement is executory under the Countryman definition.

The Sixth Circuit also has applied a "functional" approach when determining whether a contract is executory. *See Rieser v. Dayton Country Club Co. (In re Magness)*, 972 F.2d 689, 694 (6th Cir.1992); *Structurlite*, 86 B.R. at 926. Under the functional approach, courts "work backward, proceeding from an examination of the purposes rejection is expected to accomplish. If those objectives

Courts consistently have held that rejection of an executory contract does not unwind transactions that already have been consummated—or void property rights that already have been obtained—under the contract prior to rejection. *See Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1308 (11th Cir.) ("[T]he rejection of the Agreement ... did not effectively rescind [the agreement] and reverse the executed transfer of the ... copyrights ...."), *cert. denied,* —— U.S. ——, 128 S.Ct. 613, 169 L.Ed.2d 393 (2007); *Leasing Serv. Corp. v. First Tenn. Bank Nat'l Ass'n*, 826 F.2d 434, 436–37 (6th Cir.1987) (holding that security interest created by executory agreement was unaffected by the trustee's rejection of the executory agreement); *In re Peralta Food Corp.*, 2008 WL 190503 at **6–7 (Bankr.S.D.Fla. Jan.18, 2008) ("Rejection of the Settlement Agreement does not rescind the Agreement or the obligations found therein.... Rejection of the Settlement Agreement will not affect the validity of [the] Final Judgment against the Debtor and Debtor's obligations thereunder. The deposit of the funds into the registry of the court earmarked said funds for the payment obligation owing to [the creditor], and thus create a secured claim on those funds in favor of [the creditor]. Rejection would not entitle the Debtor to the use of those funds." (citation omitted)). As one bankruptcy court aptly put it,

[r]ejection does not 'nullify,' 'rescind,' or 'vaporize' the contract or terminate the

rights of the parties; it does not serve as an avoiding power separate and apart from the express avoiding powers already provided in the Bankruptcy Code. For example, if a debtor entered a contract prepetition and conferred rights in an asset to a nondebtor party, a trustee would not be entitled to repudiate the transfer and retrieve the property unless one of the other avoiding powers[,] not section 365[,] permitted [the trustee] to do so.

*In re Bergt,* 241 B.R. 17, 35 (Bankr.D.Alaska 1999). *See also In re Hughes,* 166 B.R. 103, 105 (Bankr.S.D.Ohio 1994) ("Consistent with the bankruptcy law's general deference to state-law rights in or to specific property, rejection of a contract does not terminate such rights that arise from rejected contracts. Rejection is not itself an avoiding power.") (quoting *In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 687, 709 (Bankr.S.D.N.Y.1992)); *In re Metro Transp. Co.,* 87 B.R. 338, 343 (Bankr.E.D.Pa.1988) ("[R]ejection of an executory contract does not effect a rescission of such a contract. Hence, rejection does not undo performances by the parties to the contract, either pre-petition or post-petition, which have [preceded] the assumption or rejection." (citations omitted)); *Rudaw/Empirical Software Prods. Ltd. v. Elgar Elecs. Corp. (In re Rudaw/Empirical Software Prods. Ltd.),* 83 B.R. 241, 245 (Bankr.S.D.N.Y.1988) ("[T]he debtor cannot undo an executed sale of property where title has passed. Such property

have already been accomplished, or if they can't be accomplished through rejection, then the contract is not executory...." *Structurlite,* 86 B.R. at 926 (quoting *Chattanooga Memorial Park v. Still (In re Jolly),* 574 F.2d 349, 351 (6th Cir.1978)). The Bachinskis' objectives are twofold: that the deemed rejection of the Settlement Agreement render the prepetition waiver of discharge unenforceable and that it nullify the transfer of the Manistee Property to Simmons Capital. As explained

above, however, the prepetition waiver of discharge contained in the Settlement Agreement is unenforceable whether the Settlement Agreement is rejected or not, and rejection does not unwind the transfer of the Manistee Property. The deemed rejection of the Settlement Agreement, therefore, does not further the Bachinskis' objectives. Accordingly, although the Court need not decide the issue, the Settlement Agreement does not appear to be executory under the functional approach.

does not revert ... as a result of the debtor's rejection of the executory contract."); *In re Executive Tech. Data Sys.,* 79 B.R. 276, 282 (Bankr.E.D.Mich.1987) ("Section 365 addresses only future performance obligations of the parties. It does not have any impact upon the executed portions of a contract."). In light of the well-established rule of law illustrated by these cases, the Court concludes that, even if the Settlement Agreement were executory, its deemed rejection would not reverse a property transfer made in accordance with the agreement prior to its rejection. Thus, rejection of the Settlement Agreement would not have the effect of unwinding the transfer of the Manistee Property.

## VII. Conclusion

For the foregoing reasons, the Plaintiff's Motion is **DENIED,** and the Defendants' Cross–Motion is **GRANTED** in part and **DENIED** in part. The Defendants' Cross–Motion is **GRANTED** insofar as it seeks a determination as a matter of law that the Debtors' debt to Simmons Capital is not excepted from discharge under § 523(a)(4) and is otherwise **DENIED** due to the remaining genuine issues of material fact. Trial on the issues remaining under Count I of the Complaint—whether the Bachinskis' debt to Simmons Capital is nondischargeable under § 523(a)(2)(A) or (6)—and on Count II of the Complaint will be set by separate order of the Court.

**IT IS SO ORDERED.**