ELECTRONIC CITATION:  2011 FED App. 0008P (6th Cir.)
File Name:  11b0008p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re:   RUSSELL LOONEY, | ) |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | )   No. 10-8083 |
| OLD REPUBLIC TITLE COMPANY OF | ) |
| TENNESSEE AS SUBROGEE TO | ) |
| ROBERT S. GREENBERG AND JO ANN | ) |
| GREENBERG, | ) |
| | ) |
| Plaintiff - Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| RUSSELL LOONEY, | ) |
| | ) |
| Defendant - Appellant. | ) |
| | ) |
| _____ | ) |

Appeal from the United States Bankruptcy Court
for the Middle District of Tennessee
Case No. 08-11453; Adv. No. 09-88

Decided and Filed:   June 29, 2011

Before:  HARRIS, RHODES, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:** E. Covington Johnston, Jr., JOHNSTON & STREET, PLLC, Franklin, Tennessee, for
Appellant.  Eric W. Smith, BRADLEY ARANT BOULT CUMMINGS LLP, Nashville, Tennessee,
for Appellee.

———————————

**OPINION**

———————————

ARTHUR I. HARRIS, Bankruptcy Appellate Panel Judge. In this appeal, Russell Looney ("debtor") appeals the bankruptcy court's determination that the debt he owed to Old Republic Title Company of Tennessee ("Old Republic"), in the amount of $286,940, is nondischargeable. For the reasons that follow, we AFFIRM.

## I. ISSUE ON APPEAL

The issue on appeal is whether the bankruptcy court erred when it found the debt debtor owed to Old Republic, which had been reduced to judgment by a state court settlement agreement, nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("BAP") has jurisdiction to decide this appeal. The United States District Court for the Middle District of Tennessee has authorized appeals to the BAP. A final order of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted).

Conclusions of law are reviewed *de novo*. *Mitan v. Duval (In re Mitan)*, 573 F.3d 237 (6th Cir. 2009). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Palmer v. Washington Mut. Bank (In re Ritchie)*, 416 B.R. 638, 641 (B.A.P. 6th Cir. 2009) (emphasis in original) (*citing Gen. Elec. Credit Equities, Inc. v. Brice Rd. Devs., LLC (In re Brice Rd. Devs., LLC)*, 392 B.R. 274, 278 (B.A.P. 6th Cir. 2008)).

Factual findings underlying the bankruptcy court's ruling are reviewed for clear error. *In re Mitan*, 573 F.3d 237. "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 944 (6th Cir. 2007) (*quoting Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1507 (1985)). Additionally, the trial court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bank. P. 8013; *see also Peveler v. United States*, 269 F.3d 693, 702 (6th Cir. 2001) (refusal to set aside credibility determination of magistrate judge "who has had opportunity to view the witness on the stand and assess his demeanor.") (quoting *Ramsey v. United Mine Workers of America*, 481 F.2d 742, 747 (6th Cir. 1973) ("Thus, however we might individually view the evidence if we were the triers of fact, it is clear that we are required to give great weight to the findings of the trial court which had the opportunity to see the witnesses, to hear their evidence as it was presented, to view the demeanor of the persons who testified in court, and to determine all issues of credibility.").

### III. FACTS

The debtor was a member of Green Investors, LLC, ("Green Investors") a two-member LLC with the debtor and Michael Dolan as its sole members. In October of 2005, Green Investors purchased the property located at 4529 Wayland Drive, Nashville, Tennessee. Green Investors then contracted with Carpenter Construction to serve as general contractor for the construction of a house on the property. Paul Robert Carpenter ("Mr. Carpenter") is the sole shareholder and President of Carpenter Construction. Pursuant to agreement, Carpenter Construction would receive $50,000 in overhead in monthly installments during the project and Green Investors would pay all associated construction expenses. In addition to overhead, Carpenter Construction was to receive $100,000 for its contracting services. However, that agreement was never put in writing.

On January 26, 2006, Green Investors refinanced the property by borrowing $332,000 from Branch Banking and Trust Company ("BB&T"). In May of 2006, Green Investors borrowed an additional $1,000,000 from BB&T to fund the construction project. At that time, the debtor

executed a personal guaranty of the obligations of Green Investors to BB&T. In April of 2007, Green Investors borrowed additional funds from BB&T, bringing the total amount of indebtedness to $1,600,000. Of those funds, the debtor wrote $520,640 in checks to himself. The debtor's testimony was, at best, inconsistent regarding whether these funds were used wholly for expenses of the construction of the property at issue. (*See* Tr. at 87-88 (debtor admitted all funds not used for construction of property), 90-104 (cross examination re: purpose of personal checks).) In June of 2006, Carpenter Construction began building a home on the property. In doing so, Carpenter Construction contracted with various vendors and subcontractors. Upon receipt of invoices for services rendered or supplies provided, Mr. Carpenter faxed or hand-delivered those invoices to the debtor for payment on a weekly and monthly basis. The debtor would then write checks on behalf of Green Investors to pay the invoices. The debtor remained current on these invoices through May of 2007.

In February of 2007, the Greenbergs (the buyers), Green Investors (the owner), and Carpenter Construction (the contractor) executed a contract in which Carpenter Construction agreed to finish the construction project and the Greenbergs agreed to purchase the improved property from Green Investors at the price of $1,905,000. Paragraph 10 of the contract provided:

> Owner will convey, by valid general warranty deed to the Buyers, marketable fee simple title to the Property. Following the execution and delivery of this Contract by both Owner and Buyers, Buyers, at Buyers' expense shall apply to John T. Cook (Old Republic) in Nashville, Tennessee or a title company acceptable to Buyers' lender for a title insurance binder in the amount of the Purchase Price for the property, which shall disclose the state of the title to the Property and shall constitute the commitment of such company to insure the title following the Closing in the name of Buyers and /or Buyers' successors, assigns or designees, with a title insurance policy issued by said company in an Alta Form B owner's policy of title insurance. Such binder must reveal insurable and marketable title of the fee simple interest in the Property in Owner, subject only to such standard exceptions and other matters as may be approved by Buyers for the Property prior to Closing. **The standard exceptions for laborer's and materialmen's liens, construction liens, parties in possession, and easements shown or not shown by the public records shall be removed by Owner, at Owner's expense, at or**

-4-

> **prior to Closing.  Such policy shall affirmatively insure that no parties other than Buyers will have any interest in the Property. The providing of such affirmative coverage shall be a condition to the parties' performance of this Contract.**

(Trial Ex. 2) (emphasis added).

It appears that in June of 2007, Green Investors began to have trouble satisfying its obligations to Carpenter Construction.  In June of 2007, Green Investors exhausted the remaining balance of the BB&T credit line, and from June until the closing date of August 10, 2007, many subcontractors and vendors either went unpaid or were paid by Carpenter Construction.  Although the debtor denies receipt of certain invoices reflecting nonpayment, Mr. Carpenter testified that he delivered all invoices dated prior to August 1, 2007, before closing.  Specifically, Mr. Carpenter testified:

> There was $160,000 of invoices that was dated prior to August 1st.  I'm certain those were delivered to [the debtor] prior to closing.  In addition to that, there's approximately another $100,000 of invoices that were paid directly during - - directly by Carpenter Construction prior to closing in order to make sure the home was complete.  I'm 100% certain he knew of those.  In addition to that, there's two other large invoices, one for 28,000 and one for 21,000; and I'm 100 percent certain he knew of those as well.

(Tr. at 38, lines 2-9.)

At closing, Green Investors executed a Mechanics' Lien and Extended Coverage Affidavit and Indemnity Agreement ("owner's affidavit") in which the debtor declared under oath that "title to the property is good and marketable" and that:

> All mechanics and materialmen who have worked on the improvements or furnished materials . . . have been paid in full, and there are no persons or entities whatsoever who are in a position to obtain a mechanics' or materialmen's lien which would result in a judgment being rendered with priority of the interest being insured by the Policy.

-5-

(Trial Ex. 8.) The notarized owner's affidavit further provides, "THIS AFFIDAVIT IS MADE FOR THE PURPOSE OF INDUCING Old Republic National Title Ins. Co. to issue a policy or policies insuring the title to the property." (*Id.*) (emphasis in original). Green Investors then conveyed a warranty deed to the Greenbergs for a final purchase price of $1,934,551. The warranty deed "covenanted" that Green Investors was "lawfully seized and possessed of said land in fee simple" and "[had] a good right to convey" the land and that "the same is unencumbered, unless otherwise herein set out." (Trial Ex. 6.) Green Investors received $151,823.12 in proceeds from the sale of the property. Of those proceeds, the debtor wrote $113,500 in checks payable to himself. Again, the debtor's testimony is, at best, inconsistent regarding the purpose of the personal checks.

On October 3, 2007, Carpenter Construction asserted and recorded a lien against the property in the amount of $316,363.62, which was amended on November 13, 2007, to $349,097.97. On October 25, 2007, Carpenter Construction filed suit in state court. As title insurer to the Greenbergs, Old Republic settled and compromised Carpenter Construction's claims in the state court litigation and secured the release of Carpenter Construction's liens on the property. On or about October 3, 2008, the parties, including Carpenter Construction, Old Republic, the Greenbergs, Green Investors, Mr. Dolan, and the debtor, executed a settlement agreement in the state court litigation. The salient terms of the agreement are summarized as follows:

1.    Old Republic promised to pay $230,000 to Carpenter Construction

2.    Green Investors promised to pay $20,000 to Carpenter Construction.

3.    Green Investors promised to pay $230,000 to Old Republic prior to September 1, 2009.

4.    Green Investors, and the debtor individually, agreed to consent judgments in favor of Old Republic in the amount of $241,500, upon which Old Republic could commence collection proceedings for any nonpayment.

5.    The debtor and Mr. Dolan personally promised to pay $20,000 to Carpenter Construction in the event Green Investors was unable to satisfy its obligation.

6.  The debtor promised to pay Old Republic $230,000 personally in the event that Green Investors was unable to satisfy its obligation.

7.  The debtor provided security to Old Republic in the form of a deed of trust for real property located at 3525 Bailey Road, in Franklin, Tennessee.

On December 4, 2008, the debtor filed for bankruptcy. On February 13, 2009, Old Republic filed a claim for $241,500. On March 12, 2009, Old Republic commenced an adversary proceeding asking the bankruptcy court to find this debt nondischargeable.

On February 25, 2010, the bankruptcy court conducted an evidentiary hearing. On August 6, 2010, the bankruptcy court found the debt nondischargeable pursuant to § 523(a)(2)(A). In its memorandum of opinion, the court analyzed the elements of § 523(a)(2)(A) and found that Old Republic had proven its claim of fraudulent representation. Specifically, the bankruptcy court made several factual determinations:

- The debtor clearly benefitted from his materially false statement because he was released from a $1,600,000 guaranty and because he withdrew $113,500 of the sales proceeds in an individual capacity without explanation.

- The debtor's representation that all subcontractor and vender fees had been paid was false and material because at least $250,000 in outstanding invoices remained.

- The debtor knew or acted with "gross recklessness."

- The debtor intended to deceive Old Republic because the debtor signed a sworn affidavit, which was specifically designed to induce Old Republic to issue a title insurance policy free of an exception for contractor's liens.

- The debtor had reason to deceive because Green Investors had exhausted its credit limit with BB&T and the debtor had to close the sale to be released from the guaranty.

- Old Republic justifiably relied on the debtor's false representations by removing the exception to title insurance coverage for contractors' liens as a result of the false representations.

- Old Republic's reliance was the proximate cause of its loss because, having removed the exception, Old Republic was responsible for defending and indemnifying the Greenbergs.

The bankruptcy court also found that Old Republic was not prevented from bringing a § 523 claim as a result of its participation in the underlying state court settlement agreement. On October 25, 2010, the bankruptcy court amended its prior order to include a money judgment in the amount of $286,940. On November 3, 2010, the debtor timely filed a notice of appeal.

## IV. DISCUSSION

A.     *The Effect of a Settlement Agreement on a §523 claim*

The debtor asserts that the settlement and release agreement paired with the debtor's providing of new security, a deed of trust in favor of Old Republic secured by separate real property, renders the underlying debt automatically dischargeable. The debtor's brief provides "[c]learly, this was a complete novation of any obligation owed by [the debtor] arising out of this transaction, and clearly, this Agreement created a new and separate remedy at law in favor of Old Republic Title. This fact clearly renders the subject debt dischargeable in [the debtor's] Bankruptcy Action." The bankruptcy court rejected this argument as contrary to the Supreme Court's holding in *Archer v. Warner*, 538 U.S. 314, 123 S. Ct. 1462 (2003). The memorandum of opinion provides in pertinent part:

> The Supreme Court has held that the non-dischargeability provisions "appl[y] to all debts that 'aris[e] out of' fraud." *Archer v. Warner*, 538 U.S. 314, 321 (2003) (citations omitted). "A debt embodied in the settlement of a fraud case 'arises' no less 'out of' the underlying fraud than a debt embodied in a stipulation and consent decree." *Id.* This does not mean that "a debt allegedly arising from fraudulent conduct, which is made the subject of a settlement agreement, is ipso facto non-dischargeable under § 523(a)(2)(A)." *Simmons Capital Advisors, Ltd., v. Bachinski*

> *(In re Bachinski),* 393 B.R. 522, 542 (Bankr. S.D. Ohio 2008). Instead, the creditor has the opportunity "to demonstrate that the debt underlying a settlement arises out of fraud, false pretenses or false representation." *Id.*

(Dkt. 178 at 13.)

While this panel must review conclusions of law *de novo*, it is apparent that *Archer v. Warner* is binding precedent on the issue at hand. In *Archer v. Warner*, the Archers sued the Warners in state court alleging fraud in connection with the sale of the Warners' company to the Archers. *Archer*, 538 U.S. at 317. In full settlement of the state court action, the Warners paid the Archers $200,000, and promised to pay an additional $100,000 in exchange for dismissal. *Id.* When the Warners defaulted on the first payment of the promissory note, the Archers sued to recover the $100,000 consent judgment, which precipitated the Warners' filing of a bankruptcy petition. *Id.* at 317-18. The Archers brought an adversary proceeding to determine whether the $100,000 debt was nondischargeable. *Id.* Mr. Warner agreed to a consent judgment holding his debt nondischargeable, but Mrs. Warner contested nondischargeability. *Id.* The bankruptcy court ruled in favor of Mrs. Warner and found the promissory note debt dischargeable. *Archer*, 538 U.S. at 318. The Fourth Circuit affirmed, and provided that the settlement acted as a novation which replaced the original debt allegedly obtained by fraud with a new debt that was not for money obtained by fraud but instead money for breach of contract. *Id.*

In deciding *Archer,* the Supreme Court followed *Brown v. Felsen*, 442 U.S. 127, 99 S. Ct. 2205 (1979). In *Brown*, the Court held that all debts arising from fraudulent conduct are nondischargeable and "the mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt." *Brown*, 442 U.S. at 138. The *Archer* Court conducted a full analysis of the factual similarities between *Brown* and *Archer*. In doing so, it rejected the theory of "novation" and provided "[i]f the Fourth Circuit's view were correct – if reducing a fraud claim to settlement definitively changed the nature of the debt for dischargeabilty purposes – the nature of the debt in *Brown* would have changed similarly, thereby rendering the debt dischargeable." *Archer*, 538 U.S. at 320.

> The only difference we can find between *Brown* and the present case consists of the fact that the relevant debt here is embodied in a settlement, not in a stipulation and

consent judgment. But we do not see how that difference could prove determinative. The dischargeability provision applies to all debts that "aris[e] out of" fraud. *Id.*, at 138, 99 S.Ct. 2205; *see also Cohen v. de la Cruz*, 523 U.S. 213, 215, 118 S. Ct. 1212 (1998). A debt embodied in the settlement of a fraud case "arises" no less "out of" the underlying fraud than a debt embodied in a stipulation and consent decree.

*Id.* at 321. The Court concluded that "the Archers' settlement agreement and releases may have worked a kind of novation, but that fact does not bar the Archers from showing that the settlement debt arose out of 'false pretenses, a false representation, or actual fraud,' and consequently is nondischargeable, 11 U.S.C. § 523(a)(2)(A)." *Id.* at 323.

In this case, the debtor's argument centers around the theory of "novation" but fails to distinguish the circumstances surrounding the settlement agreement from the circumstances in either *Archer* or *Brown*. The only distinction, the debtor's execution of a deed of trust, provides no support for the debtor's argument. The facts of this case are substantially identical to the established Supreme Court precedent set forth in *Brown* and *Archer*. *See also Giaimo v. DeTrano (In re DeTrano)*, 326 F.3d 319, 320, 322-23 (2d Cir. 2003) (in light of Supreme Court's decision in *Archer v. Warner*, district court correctly held that courts are to look beyond contractual nature of settlement agreement to determine whether underlying debt is nondischargeable) (Sotomayor, J.). Accordingly, we affirm the bankruptcy court's decision that Old Republic is not barred from bringing an 11 U.S.C. § 523(a)(2)(A) claim.

B.    *Establishing a § 523(a)(2)(A) claim*

Section 523 provides in pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt-
>
>          . . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by-

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss. *Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998) (footnote omitted). *See also Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir. 1993). The debtor asserts that Old Republic failed to carry its burden of proof regarding every element of 11 U.S.C. § 523(a)(2)(A). In its memorandum of opinion, the bankruptcy court carefully considered each of the four elements that the Sixth Circuit identified in *Rembert* for nondischargeability under 11 U.S.C. § 523(a)(2)(A). Having reviewed the entire record, this panel is not left with a definite and firm conviction that a mistake has been made by the trial court with respect to the elements of nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A).

## V. CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court, entered on October 25, 2010, determining the debt, in the amount of $286,940, which included attorney's fees, nondischargeable pursuant to § 523(a)(2)(A) is AFFIRMED.